[Civ. No. 14783. First Dist., Div. One. Jan. 29, 1952.]

RICHARD JERMANE, a Minor, etc., et al., Appellants, v. ALEXANDER JOSEPH FORFAR, Respondent.

Franklin C. Stark, Carl E. Simon, Jr., Stanley E. Sparrowe and Stark & Champlin for Appellants.

Brown, Rosson & Berry for Respondent.

WOOD (Fred B.), J.—Plaintiffs Richard Jermane and his parents, Kenneth R. and Claudia Joan Jermane, appeal from the judgment entered upon a verdict for defendant, in an action for damages for personal injuries sustained by Richard when hit by an automobile driven by the defendant. "Appellant" as used herein refers to Richard unless the context otherwise indicates.

Appellant predicates his appeal principally upon asserted errors in the giving and refusing of instructions to the jury. ■ Consideration of the assertedly erroneous giving and refusing of instructions involves, principally, the question: Was appellant a "pedestrian" at the time of the accident? He was crossing a street on a four-wheel scooter, lying face down and propelling it with one foot upon the pavement. There is evidence that he was crossing in an unmarked pedestrian crosswalk at a street intersection, and that respondent turned into this street and crosswalk from the intersecting street after stopping and observing traffic.

The trial court instructed the jury: "You are instructed that plaintiff herein, Richard Jermane, at the time and place of this accident, did not occupy the legal position of a pedestrian crossing the street." Appellant assigns as error the giving of this instruction, and the refusal of each of the following two instructions requested by appellant: "You are instructed that Section 560 of the Motor Vehicle Code of the State of California in effect on November 26, 1948, reads as follows: '(a) (Yielding the right of way to pedestrian.) The driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection, except as otherwise provided in this chapter,'" and "If you should find from the evidence that the defendant conducted himself in violation of California Vehicle Code Section 560 just read to you, you are instructed that such conduct constituted negligence as a matter of law."

The word "pedestrian" is not defined in the Vehicle Code. It is used therein in a broader sense than its literal dictionary

meaning: "A walker; one who journeys on foot; a foot traveler; specif., a professional walker." (Webster's New Internat. Dict., 2d ed., unabridged.)

It is already judicially established that a person walking upon or across a highway does not cease to be a pedestrian when pushing a cart (*Gallardo* v. *Luke,* 33 Cal.App.2d 230 [91 P.2d 211]; *Lewis* v. *Watson,* 229 N.C. 20 [47 S.E.2d 484]) or a lawn mower (*Blodget* v. *Preston,* 118 Cal.App. 297 [5 P.2d 25]), or a baby carriage (*Tedla* v. *Ellman,* 280 N.Y. 124 [19 N.E.2d 987]), or a bicycle (*Holmes* v. *Blue Bird Cab,* 227 N.C. 581 [43 S.E.2d 71]; *Benson* v. *Anderson,* 129 Wash. 19 [223 P. 1063]), or when pulling a cart (*Flaumer* v. *Samuels,* 4 Wn.2d 609 [104 P.2d 484]).

In several jurisdictions the question whether or not a person traveling upon or across a highway upon roller skates is a pedestrian, has been presented for judicial determination. In each case which has come to our attention the court has deemed him a pedestrian. (*Nordman* v. *Mechem,* 227 Mich. 86 [198 N.W. 586]; *Eichinger* v. *Krouse,* 105 N.J.Law 402 [144 A. 638]; *Dunlop* v. *Public Service Co-Ordinated Transport,* 122 N.J.Law 683 [4 A.2d 683]; *Caronia* v. *Muller,* 250 App.Div. 722 [293 N.Y.S. 363]; *Leopold* v. *Williams,* 54 Ohio App. 540 [8 N.E.2d 476].) Concerning this question, the court in *Eichinger* v. *Krouse, supra,* said: "While it is true that a pedestrian is ordinarily understood to be one who travels on foot, nevertheless the mere circumstance that he or she has attached to his or her feet roller skates, or ice skates, or walks on stilts, or uses crutches, or is without feet and propels himself or herself along by means of a chair or by some other mechanical device, does not clothe him or her, in a broad and general sense, with any other character than that of a pedestrian." (144 A. at p. 639.) In *Nordman* v. *Mechem, supra,* interpreting the expression "a person walking in the roadway of a public highway," the court said: "The term 'walking in the highway' should be given a meaning sufficiently liberal to effectuate the apparent purpose of the statute, if this can be done without stretching the language employed beyond its comprehensive limits. The word 'walk,' confined to its sense of locomotion, has many shades of meaning; it springs from the old Anglo Saxon word 'wealcan' meaning 'to roll, toss one's self about, roll about.' Skeat, Etymological Dictionary English Language,

subject 'Walk.' In walking one takes movement of the whole body into the operation; in skating one does no more. In a narrow sense, 'walking' is progress made by use of heels and toes. But it is evident the Legislature did not intend any such restricted sense in the effort to safeguard human life. One proceeding on·foot is walking. The boy was proceeding on foot, aided by roller skates. It used to be quite common to say that one walking 'takes shank's horses.' In roller skating the same 'shank's horses' are employed. If a baby creeps into the highway or a boy is running, jumping or sliding, or a girl skipping therein, is it conceivable that all such persons are without the safeguard of the statute? Certainly not.

"The purpose of the statute is to safeguard human life, and it should not receive a construction making it applicable only to persons walking heels and toes. In construing the statute we cannot escape the conviction that the term 'walking in the highway' was intended to be inclusive of all persons in the highway, standing or moving therein, using their legs and feet." (198 N.W. at p. 587.)

The rationale of those decisions applies here. Plaintiff was proceeding on one foot, aided by his scooter.

The context in which the Legislature has used the word "pedestrian" lends emphasis to this view. In respect to traffic regulations, two major classifications are observable: vehicular traffic and pedestrian traffic. The Vehicle Code defines "Roadway" as that portion of a highway designed or ordinarly used for "vehicular" travel (§ 83); a "Sidewalk" as that portion of a highway other than the roadway, set apart for "pedestrian" travel (§ 84). It indicates that a "Crosswalk" is for the use of a pedestrian (§ 85) and that a "Safety zone" is an area set apart within a roadway for the exclusive use of "pedestrians" (§ 88). By the provisions of section 459.4, the Legislature permits local authorities to regulate "vehicular and pedestrian traffic" in subways and upon bridges.

The traffic regulations appear in division 9, sections 449-604.12, of the code. Here are defined the rights and duties of the "driver of a vehicle" (for example, sections 510, 511, 512, 516, 525, 527-531, 550-553); the "motorman of any street car" (§§ 476 and 554); the "operator of a trolley coach" (§§ 452.5 and 452.10), and the "pedestrian" (§§ 476,

554 and 560-565). A person "riding a bicycle or riding or driving an animal upon the highway" has the rights and is subject to the duties of the driver of a vehicle (§ 452). The duties of the owner of livestock, in respect to the use of a highway, are defined in section 423 of the Agricultural Code.

Appellant, traveling upon his scooter, enjoyed none of these rights and was subject to none of these duties unless he was a "pedestrian," for his scooter was not a vehicle (defined in Veh. Code, § 31), moved as it was by human power. An intent to exempt him cannot reasonably be ascribed to the Legislature. We conclude that the word "pedestrian" as used in the code included appellant when propelling himself across the roadway on his scooter.

This holding does not carry the inference that every person on a highway is a pedestrian if not the driver of a vehicle or of an animal, the motorman of a streetcar, the operator of a trolley coach, or the rider of a bicycle or of an animal. The traffic regulations apply to persons controlling movement upon the highways. A mere passenger riding in a vehicle does not control its movement. A person whose work requires him to be upon the roadway is not, while at work, using it for the purpose of travel, a fact recognized by statute (Veh. Code, § 453) and by judicial decision (*Scott* v. *City & County of San Francisco,* 91 Cal.App.2d 887 [206 P.2d 45]).

We have examined the decisions cited by respondent in support of the view that appellant was not a pedestrian, and find them inapplicable. In *Spears Dairy* v. *Bohrer,* (Tex. Civ.App.) 54 S.W.2d 872, the court deemed a newsboy's little wagon (in which he carried his papers when delivering them) a "vehicle," as used in a statute which made it the duty of the person in charge of a vehicle, upon changing its course, "if the movement or operation of other vehicles" might be affected thereby, to signal his intention to the person "in charge of such [other] vehicle." The report of the decision does not indicate that the statute in question placed any limitation upon the meaning of "vehicle," as our statute does when it excludes devices moved by human power. *Hattie* v. *Shaheen,* 37 Ohio App. 50 [174 N.E. 20], held that a person riding in a coaster wagon, propelling it with one foot, was an operator of a vehicle, not a pedestrian. But the applicable statute, a local ordinance, defined "vehicle" as including equestrians, led horses, and everything on wheels or runners,

except street cars or baby carriages; a definition not comparable to our statutory definition of vehicle. *Wright* v. *Salzberger & Sons*, 81 Cal.App. 690 [254 P. 671], involved a coaster upon which two boys were sitting, propelling it with their feet, but is not particularly significant in the present inquiry. A local ordinance required vehicles to carry lights, excepting, among others, vehicles that might be propelled by a pedestrian. That excepted the coaster from the light carrying requirement but could not make it a "vehicle" as defined by section 31 of the Vehicle Code. There are decisions which, while not discussing the meaning or status of pedestrian, inferentially treat a person coasting upon a sled as the operator of a vehicle. *Post* v. *Richardson*, 273 Pa. 56 [116 A. 531], will serve to illustrate. There, the plaintiff's decedent was coasting on a sled, downhill, upon a snow covered road, at a speed of 15 to 25 miles per hour. In such a case, under our Vehicle Code, the sled might well be deemed a vehicle. It was propelled by the force of gravity, not by human power. That is quite consistent with the view that a person drawing a sled, or a four-wheel scooter, upon or across a roadway, or propelling himself upon it with one foot on the pavement, is a pedestrian.

Respondent further contends that the requested instruction which was couched in the terms of subdivision (a) of section 560 of the code, was inapplicable even if appellant were entitled to the rights of a pedestrian, because neither party knew the other was using or intending to use the highway. This point lacks merit. █ It is proper to instruct the jury as to a pedestrian's right of way in a crosswalk even though the driver of the vehicle testified that he could not or did not see the pedestrian prior to the collision (*Fischer* v. *Keen*, 43 Cal.App.2d 244, 248-49 [110 P.2d 693]; *Nicholas* v. *Leslie*, 7 Cal.App.2d 590, 594 [46 P.2d 761]). Here, appellant testified that, after stopping to observe traffic, he entered the roadway and proceeded along and in the crosswalk. █ Respondent testified that when he stopped at the intersection he could see the area of the crosswalk but not the pavement all the way across; the front of his car prevented his seeing the pavement all the way across because tilted upward on a hill; that, as he started to turn, he could see the area above the crosswalk, not the crosswalk itself, and did not see anyone in the crosswalk. From this, and other relevant evidence in the case, it was for the jury to determine

whether or not respondent exercised care in the performance of his duty toward pedestrians in the crosswalk. To perform that function properly, the jury needed adequate instructions concerning the applicable provisions of law.

■ Respondent claims that the second requested instruction was improper because it charged that if respondent violated section 560 of the-code (failed to yield the right of way), he was negligent as a matter of law. There is merit in this point. We have reviewed the record and cannot say that, if such a violation occurred, reasonable men could draw but one inference and that an inference that such violation was the sole effective cause of the injury. (See *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581, 590 [177 P.2d 279].) ■ But that did not justify the refusal of the other requested instruction, couched in the words of section 560. Nor did it justify the instruction, not requested by appellant, that appellant, "at the time and place of this accident, did not occupy the legal position of a pedestrian crossing the street." As said in *Oliphant* v. *Brown,* 7 Cal.App.2d 584, at 587 [46 P.2d 790], of the refusal of a pedestrian right of way instruction and the giving of a misinstruction: "Plaintiff's right of way had an important bearing upon the issues of negligence and contributory negligence. For these reasons we conclude that the case of appellants is one fully meeting the requirements of article VI, section 4½, of the Constitution. We are strengthened in this view by the fact that the court gave an instruction, the first sentence of which reads as follows: 'This is not a case occurring in a marked crosswalk.' By this instruction the jury was told, inferentially, that plaintiff's rights would have been greater had she been crossing in a marked crosswalk. It also might have been inferred that the rights of plaintiff and defendant were equal, or even that the defendant, as the driver of the vehicle, had a right which was superior to that of pedestrians." In *Satterlee* v. *Orange Glenn School Dist., supra,* 29 Cal.2d 581, after holding an instruction on the rights of way of vehicles at intersections was properly refused because too broad, the Supreme Court found prejudicially erroneous an instruction given by the trial court of its own motion on this subject. Concerning the prejudicial character of such an error, the Supreme Court said: "The instruction given by the court on its own motion had the effect of minimizing, if not completely negativing, the code provision. It was, therefore, erroneous and

considering the direct conflict in the evidence, constituted 'a miscarriage of justice' within the meaning of article VI, section 4½ of the California Constitution.'' (29 Cal.2d 593.) The judgment should be reversed.

Other points urged by appellant are not well taken and do not require discussion.

The judgment appealed from is reversed.

Peters, P. J., and Bray, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 27, 1952. Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.