VALLÉE, J.
 

 Appeal by plaintiff from a judgment for defendants entered on a jury verdict in an action for damages for personal injuries.
 

 Plaintiff ran into, or was struck by, a truck driven by defendant Watanabe at the intersection of Western Avenue and Adams Boulevard in Los Angeles before daylight about 5 :30 a. m. on October 15, 1956. Watanabe at the time of the accident was acting in the course and scope of his employment by defendant Sugich Company, Inc. Western Avenue extends north and south; Adams Boulevard, east and west. Each
 
 *304
 

 street is
 
 60 feet wide. There was a north-south marked crosswalk 17 feet wide across Adams paralleling the easterly curb of Western. The intersection was controlled by tri-lite signals and both plaintiff and Watanabe had green lights for their movements. The weather was good.
 

 Plaintiff was proceeding on foot southbound across Adams from the northeast to the southeast corner of the intersection. Watanabe was making a right-hand turn from a northbound position in the right-hand traffic lane on Western to proceed east on Adams. The truck headlights were operating on normal beam in good condition.
 

 Watanabe testified: his truck was northbound in the right-hand lane of Western; he waited for the signal to turn and for a pedestrian to finish crossing the street after the signal had turned green; he switched on the turn indicator to signal a right-hand turn while he waited; he did not want to drive in the parking lane next to the curb because “cars might be parked there”; he looked in the area of the crosswalk; it was free and clear of motorists and pedestrians; he started his right-hand turn; the truck was moving about 5 to 10 miles an hour; when it was halfway into the turn, he saw plaintiff for the first time a split second before the impact about 3 to 4 feet from the truck; plaintiff appeared to be “going faster than just walking”; as soon as he saw plaintiff, he applied his brakes; he was almost stopped at the moment of impact; plaintiff appeared to run into the left side of the truck.
 

 A witness, Margaret Banks, testified: she had crossed Western on foot in front of the truck while it had been waiting for the green signal on Western; the truck’s headlights and the right-hand turn indicator lights were on; after crossing Western, she stood on the southeast corner of the intersection; immediately before the accident she was facing north, looking toward Adams; all “the lights were burning, the street lights, plus the lights from the gasoline station” on the southeast corner; she could see no one in the street; as the truck turned she heard a thump and saw plaintiff fly up and fall backwards into the street. She also testified that before the accident happened she talked to a “newspaper fellow” at a newspaper stand on the corner.
 

 Police officers arrived at the scene about 5:35 a. m. They found the major portion of plaintiff’s body lying within the crosswalk. Plaintiff was dressed in dark green clothing. The officers observed 4 feet, 7 inches, of locked wheel skidmarks which were made by the right wheels of the truck. They
 
 *305
 
 estimated the impact occurred within 3 feet of a point
 
 22
 
 feet, 6 inches, north of the south curb of Adams and 14 feet east of the east curb of Western. This point was within the crosswalk. The truck was stopped not more than 3 feet of the estimated point of impact. The officers observed that the center portion of the truck windshield had been cleared of dew by the windshield wipers; there was light dew remaining on the sides and corners of the windshield; the lights of the truck were still operating on normal driving beam in good condition; the truck was in good operating condition; the brakes reflected good response; brush marks from the light morning dew had been rubbed off the truck by plaintiff’s clothing; these marks were on the rounded portion of the truck’s left-front fender near the headlight.
 

 Plaintiff first testified he did not remember looking to the south on Western; he “wasn’t paying any attention.” Parts of his-deposition were read to him in which he had stated his primary purpose in looking south was to see whether any ears were coming from that direction. He then testified he did look south and saw no headlights within one block to the south of the intersection. He further testified: his eyesight was good and he neither was wearing nor had he need for glasses; he made no effort to see whether there were vehicles approaching the crosswalk before he crossed over the center line on Adams; he was looking “straight ahead”; he did not allow his vision to go as far as a foot to his right from directly straight ahead; he did not look to see whether there was a car moving from a parked position or in the process of turning; after taking about three steps south of the center line, he remembered nothing until he came to lying in the street; he never saw headlights, never saw the truck, and never heard the sound of a vehicle before the accident.
 

 Plaintiff asserts the verdict is not supported by the evidence. Irrespective of the question whether defendant was negligent, the jury could have found that plaintiff was guilty of contributory negligence which was a proximate cause of the accident. As the learned trial judge stated in denying a motion for a new trial, “I am absolutely satisfied the jury found that your client had the right of way, that he was in the cross-walk, but he was one of those persons who rely exclusively on that fact and continued to cross the street in the face of obvious danger, and take no precaution for their own safety at all.”
 

 Plaintiff’s chief contention is that the court committed prejudicial error in giving and refusing certain instructions.
 

 
 *306
 
 Plaintiff requested BAJI Number 149-A
 
 [1]
 
 which stated that if the jury found that a party to the action conducted himself in violation of a statute, such conduct constituted negligence as a matter of law. Plaintiff did not complete the blank space provided on the standard form to indicate the specific statute to which the instruction was to be applied.
 

 The court refused plaintiff’s request and gave in its place on its own motion an instruction, a version of BAJI Number 149
 
 [2]
 
 prior to its revision to conform to the opinion in
 
 Alarid
 
 v.
 
 Vanier,
 
 50 Cal.2d 617 [327 P.2d 897], which advised the jury that if they found a violation of a statute, a presumption of negligence arose which could be overcome by evidence of excuse or justification showing that the violation resulted from causes or things beyond the control of the person charged with the violation.
 

 The court gave an instruction
 
 [3]
 
 based on section 560, subdivision (a) of the Vehicle Code and later gave an instruction
 
 [4]
 
 based on section 540, subdivision (a) of the Vehicle Code.
 
 [5]
 
 Bach of these instructions was stated in the words of the statute as it then read.
 

 Plaintiff asserts the court erred in instructing: first, that violation of a statute raises only a presumption of negligence, and secondly, that the presumption could be overcome by evidence showing the violation was excusable or justifiable. He further asserts the test to be applied in determining
 
 *307
 
 whether a person disobeying a statute has overcome the presumption was incorrectly stated. He also complains of the sequence in which the instructions were given.
 

 It was proper to refuse an instruction that if the defendant motorist violated Vehicle Code, section 560, subdivision (a), in not yielding the right of way to a pedestrian in a crosswalk, the defendant was negligent as a matter of law, where it cannot be said as a matter of law that such violation, if it occurred, was the sole effective cause of the plaintiff’s injury.
 
 (Jemane
 
 v.
 
 Forfar,
 
 108 Cal.App.2d 849, 855 [240 P.2d 351, 30 A.L.R.2d 860].) We have reviewed the record and cannot say that, if such a violation occurred, reasonable men could draw but one inference, and that an inference that such violation was the sole effective cause of the injury.
 

 “It is settled that disobedience of a statute for which criminal sanctions are imposed is not negligence as a matter of law under all circumstances, but a presumption of negligence arises on proof of such a violation, and the presumption can be rebutted by evidence of justification or excuse.”
 
 (Tossman
 
 v.
 
 Newman,
 
 37 Cal.2d 522, 525 [233 P.2d 1].) “ In the application of this rule each violation of a statutory requirement must be considered in connection with the surrounding circumstances. Ordinarily the excuse relied upon by the violator presents a question of fact for the jury’s determination.”
 
 (Satterlee
 
 v.
 
 Orange Glenn School Dist.,
 
 29 Cal.2d 581, 590 [177 P.2d 279];
 
 Ornales
 
 v.
 
 Wigger,
 
 35 Cal.2d 474, 477 [218 P.2d 531].)
 

 If there is any evidence of excuse or justification, the jury should be instructed on the issue whether the excuse or justification for violation of a statute appears from evidence of violation plus evidence of excuse or justification, or from all the surrounding circumstances.
 
 (Fuentes
 
 v.
 
 Panella,
 
 120 Cal.App.2d 175, 183 [260 P.2d 853].)
 

 The jury could have found that plaintiff was running or moving rapidly and that he ran into the side of the truck. It is conceded he was wearing dark clothing. It was dark. In view of these facts, the jury could have concluded from the circumstances that Watanabe’s failure to yield the right of way to plaintiff, if they first found he violated that statute, was excused or justified.
 
 (Cf. Tossman
 
 v.
 
 Newman,
 
 37 Cal.2d 522, 523-524 [233 P.2d 1].) In respect to the violation of the right-of-way statute (Veh. Code, § 560, subd. (a)), to have instructed the jury in the terms proposed by plaintiff
 
 *308
 
 would have constituted prejudicial error by taking this question of fact from the jury.
 

 Plaintiff’s contention that there was no evidence of excuse or justification for Watanabe’s making the right-hand turn in violation of section 540, subdivision (a) of the Vehicle Code and therefore it was error to give that part of the instruction with respect to excuse or justification, has merit. The only evidence showing excuse or justification for the wide right-hand turn was Watanabe’s testimony that he did not drive in the parking lane next to the curb because “cars might be parked there.” Whether the circumstances provided excuse or justification for making a right-hand turn wider than was necessary from the curb presented a question of fact for the jury only if reasonable minds could differ on the question.
 

 The statute requiring that a vehicle be driven as close as practicable to the right-hand curb or edge of the highway is for the benefit of pedestrians. (See
 
 Sartori
 
 v.
 
 Granucci,
 
 204 Cal. 28, 30 [266 P. 280] .) Since the statute was designed to protect pedestrians against harm resulting from making wider right-hand turns, the plaintiff would have been entitled to have the court give a properly worded instruction holding defendant to the statutory standard. However, where two violations of different statutes are involved and the circumstances present excuse or justification for one of them, it should not be held error to include the instruction on excuse or justification where plaintiff did not indicate the application of the correct instruction limited to the specific statute.
 
 (Cf. People
 
 v.
 
 Cooper,
 
 53 Cal.2d 755, 767 [3 Cal.Rptr. 148, 349 P.2d 964].)
 

 The instruction submitted by plaintiff did not indicate how it was to be applied. As submitted, it referred to a “violation” but did not indicate whether it was to be applied to any specific statute or to more than one statute. Any disadvantage suffered by plaintiff was due to his own inadvertence. “A trial judge is not required to correct a requested instruction which is incomplete or erroneous.”
 
 (Shaw
 
 v.
 
 Pacific Greyhound Lines, 50
 
 Cal.2d 153, 158 [323 P.2d 391].)
 

 The instruction given informed the jury erroneously that in order to overcome the presumption of negligence, the evidence must show that the statutory violation resulted from causes or things beyond the control of the person charged with the violation. In
 
 Alarid
 
 v.
 
 Vanier,
 
 50 Cal.2d 617, 624 [327 P.2d 897], the Supreme Court,
 
 *309
 
 subsequent to trial of the present case, stated the correct test to be applied in determining whether a person disobeying a statute has overcome the presumption of negligence is whether he has sustained the burden of showing that he did what might reasonably be expected of a person of ordinary prudence acting under similar circumstances who desired to comply with the law. As in that case, however, plaintiff here is not in a position to complain of the instruction as given since it limited the circumstances to be considered in justification to those beyond the control of Watanabe and was thus more favorable to plaintiff than a statement of the proper rule.
 

 The order in which the trial court reads its instructions to the jury is within its discretion.
 
 (Ritchey
 
 v.
 
 Watson,
 
 204 Cal. 387, 390 [268 P.
 
 345]; Nungaray
 
 v.
 
 Pleasant Valley etc. Assn.,
 
 142 Cal.App.2d 653, 661-662 [300 P.2d 285].) We find no prejudice in that respect.
 

 At defendants’ request the court gave an instruction on the “mere fact that an accident happened.”
 
 [6]
 
 Plaintiff says it was error to give the instruction where
 
 uncontradicted
 
 evidence showed a violation of a statute (Veh. Code, § 560, subd. (a)) giving rise to a presumption of negligence. He does not refer to section 540, subdivision (a). In
 
 Alarid
 
 v.
 
 Vanier, supra,
 
 50 Cal.2d 617, 625, the court held it was error to give a prior version of the instruction
 
 [7]
 
 where on the basis of
 
 uncontradicted
 
 evidence a presumption of negligence arises as a result of defendant’s violation of a statute. The ruling was predicated on the reasons stated in cases holding it is error to give that instruction where the
 
 uncontradicted
 
 evidence warrants the application of the doctrine of res ipsa loquitur giving rise to an inference of negligence as a matter of law. (See
 
 Jensen
 
 v.
 
 Minard,
 
 44 Cal.2d 325, 329 [282 P.2d 7] ;
 
 Shaw
 
 v.
 
 Pacific Greyhound Lines, 50
 
 Cal.2d 153, 156-158 [323 P.2d 391] ;
 
 Brown
 
 v.
 
 George Pepperdine Foundation,
 
 23 Cal.2d 256, 261-262 [143 P.2d 929] ;
 
 England
 
 v.
 
 Hospital of Good Samaritan,
 
 22 Cal.App.2d 226, 230 [70 P.2d 692] ;
 
 Ellis
 
 v.
 
 Jewett,
 
 18 Cal.App.2d 629, 634 [64 P.2d 432].)
 
 Guerra
 
 v.
 
 Handlery Hotels, Inc.,
 
 53 Cal.2d 266, 270-273 [1 Cal.Rptr. 330, 347 P.2d 674], holds it is error to give that instruction where the application of the doctrine of res ipsa loquitur
 
 *310
 
 depends on a factual determination. By analogy, for the same reasons, where the evidence of a violation of a statute is conflicting and the application of the presumption of negligence depends on a factual determination, it is error to give that instruction.
 

 The inconsistency of the instruction in the present case is less pronounced than in the cases cited. Here the “mere fact that an accident happened” instruction told the jury that fact “considered alone,
 
 does not prove
 
 that it was caused by the negligence of anyone” (emphasis added), while in the cases cited the instruction told the jury that the “mere fact that an accident happened, considered alone, does not support
 
 an inference
 
 that some party, or any party . . . was negligent.” (Emphasis added.) The use of this instruction, however, in a case in which a presumption of negligence may arise from a violation of a statute and an instruction on that subject is given, involves some danger of
 
 confusion;
 
 and in any event it is unnecessary in order to protect defendants’ interests. (See
 
 Guerra
 
 v.
 
 Handlery Hotels, Inc., supra,
 
 53 Cal.2d 266, 272 [1 Cal.Rptr. 330, 347 P.2d 674].)
 

 Defendants offered and the court gave BAJI 201-A
 
 [8]
 
 and 201-C.
 
 [9]
 
 Plaintiff asserts it was error to give 201-A in its
 
 *311
 
 entirety and 201-0 for the reason that the language of the combined instructions embodied the provisions of section 562 of the Vehicle Code pertaining to a pedestrian crossing a roadway at a point other than within a marked crosswalk. We do not believe BAJI 201-A was harmful since plaintiff testified and counsel for defendants agreed at the trial that the impact occurred in the crosswalk.
 

 If an irrelevant instruction or one not supported by the pleadings or the evidence, although not objectionable as an abstract proposition of law, is given, it is a technical error that is not prejudicial unless calculated to mislead the jury or result in a miscarriage of justice. (48 Cal.Jur.2d 217, § 189.)
 

 BAJI 201-C correctly states the duty of a pedestrian while crossing a street within a crosswalk. As said in
 
 Jeffs
 
 v.
 
 LaGore,
 
 131 Cal.App.2d 181 (p. 185) [280 P.2d 140] :
 

 “The fact that a pedestrian is in a crosswalk does not necessarily establish his freedom from negligence. It is the duty of a pedestrian to exercise reasonable care while crossing a street in a marked crosswalk, and to continue to be alert to safeguard against injury, and such duty continues throughout his passage.
 
 (O’Brien,
 
 v.
 
 Schellberg,
 
 59 Cal.App.2d 764 [140 P.2d 159].)”
 

 Plaintiff requested and the court refused to give BAJI 135-A with respect to retrograde amnesia. The court on its own motion gave an instruction on the subject.
 
 [10]
 
 Plaintiff says the instruction was ambiguous and misleading because it first referred to plaintiff’s loss of memory of events that occurred
 
 after he sustained injury
 
 and then referred to events
 
 *312
 
 which took place
 
 between the point where his memory ceased and the impact occurred.
 

 It is true that the instruction as given limited the preliminary question of fact to a determination of whether plaintiff lost his memory of events that occurred
 
 after
 
 his injury as a result of the injury. The question for the jury was merely whether he was deprived of his memory of any of the events as a result of the injury.
 
 (Kumelauskas
 
 v.
 
 Cozzi,
 
 173 Cal.App.2d 541, 546 [343 P.2d 605].) All of the evidence to which the instruction related indicated plaintiff was unconscious
 
 after
 
 the impact. If the jury believed that plaintiff at any time had lost his memory as a result of the impact, it follows that it would have found he was deprived of his memory of events
 
 after
 
 his injury. Therefore, although that portion of the instruction was technically incorrect, it appears the jury, in the event it found the loss of memory resulted from the injury, would have properly applied the presumption of due care, as instructed, to his acts “between the point where his memory ceased and the happening of the impact” occurred.
 

 Plaintiff further contends the remaining portion of the instruction prejudicially restricted the presumption of due care to plaintiff’s conduct to the time immediately preceding the accident, and did not cover the actual moment or time of the accident. It is only reasonable to conclude that the “time immediately preceding the accident” included every action taken by plaintiff, if any, from a point three steps south of the center line of Adams until his actions were compelled by the weight of the truck on impact at a point approximately 7 feet, 6 inches, south of the center line of Adams (22 feet, 6 inches, north of the south curb). There is no merit in plaintiff’s contention that the instruction as given was prejudicial. Even presuming due care on the part of plaintiff for the interval, if any, the jury could have found that his care for his own safety came too late to avoid the injury which his earlier lack of attention and his haste precipitated.
 

 Plaintiff's final contention is that the court abused its discretion in denying a new trial. It appears that witness Banks, whose testimony tended to corroborate that of Watanabe, also testified to a conversation with a newsboy at the scene just prior to the accident. In support of the motion for a new trial plaintiff filed an affidavit of one Howard Baker to the effect he was the only newsdealer at that intersection, that he was not at the intersection at the time of the accident that morning, and that his relief man did not show up for work that
 
 *313
 
 morning. Plaintiff contends this evidence would have impeached witness Banks and probably would have resulted in a verdict for plaintiff. Newly discovered evidence to impeach or discredit a witness does not compel the allowance of a new trial.
 
 (Dankert
 
 v.
 
 Lamb Finance Co.,
 
 146 Cal.App.2d 499, 502 [304 P.2d 199].)
 

 If the jury was misled or confused in any way by the errors indicated, at most it could have found defendants negligent. The record convinces us that the verdict for defendants was based on a finding that plaintiff was contributively negligent, shown by his own uncontradicted testimony as to his conduct while crossing the street. There was no error in the instructions relating to the duties of plaintiff; and even if all the instructions had been given accurately and fully applied in plaintiff’s favor, and that with respect to the mere happening of the accident had been omitted, we are satisfied the jury would have found plaintiff was negligent and that his negligence was a proximate cause of the accident.
 

 A reversal is warranted only if it is probable that the result of the trial might have been different but for the giving of erroneous or conflicting instructions, or instructions which are unsupported by the evidence. We think the result would not have been different.
 

 Affirmed.
 

 Shinn, P. J., and Ford, J., concurred.
 

 [1]
 

 “If you should find from the evidence that a party to this action conducted himself in violation of ...............................just read to you, you are instructed that such conduct constituted negligence as a matter of law.” (BAJI 149-A.)
 

 [2]
 

 “If a party to this action violated the statute (ordinance) (safety order) just read to you, a presumption arises that he was negligent. This presumption is not a conclusive one. It may be overcome by other evidence showing that, under all the circumstances surrounding the event, the conduct in question was excusable or justifiable.
 

 “To prove that a violation of a statute (ordinance) (safety order) such as that charged in this case was excusable or justifiable so as to overcome the presumption of negligence, the evidence must support a finding.
 

 “that the violation resulted from causes or things beyond the control of the person charged with the violation.”
 

 [3]
 

 “(a) The driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within marked crosswalk
 
 .”
 

 [4]
 

 “The driver of a vehicle intending to turn at an intersection shall do so as follows:
 

 “(a) Right turn. Both the approach for a right turn and a right turn shall be made as close as practicable to the right hand curb or edge of the roadway.”
 

 [5]
 

 The section references to the Vehicle Code are to the sections as they were numbered prior to September 18, 1959. (Stats. 1959, ch. 3, p. 1523.)
 

 [6]
 

 “The mere fact that an accident happened, considered alone, does not prove that it was caused by the negligence of anyone
 
 .”
 

 [7]
 

 “The mere fact that an accident happened, considered alone, does not support an inference that some party, or any party, to this action was negligent
 
 .”
 

 [8]
 

 “
 
 Although as to a roadway locality such as that involved in this case, a pedestrian has a right to cross the road at any point, these factors of consideration enter into the question of what conduct is required of him in the exercise of ordinary care:
 

 “1. If he crosses within a marked crosswalk, or at an intersection within a crosswalk, whether marked or not, the law requires the drivers of all vehicles to yield the right of way to him.
 

 “2. If he crosses at any other place, the law requires him to yield the right of way to all vehicles on the roadway so near as to constitute an immediate hazard, although this requirement does not relieve the driver of a vehicle from the duty to exercise ordinary care for the safety of any pedestrian upon a roadway.
 

 “3. The amount of caution required to constitute ordinary care increases as does the danger that a reasonably prudent person, in like position, would apprehend in the situation. For example, heavy vehicular traffic, fast traffic, poor visibility, obstructions to view, a wet street—any of these or any other perceivable factor increasing the hazard, increases the amount of caution which an ordinarily prudent person would use. ’ ’
 

 [9]
 

 “Before attempting to cross a (street) (highway) (roadway) that is being used for the traffic of motor vehicles, it is a predestrian’s duty to make reasonable observations to learn the traffic conditions confronting him; to look to that vicinity from which, were a vehicle approaching, it would immediately endanger his passage; and to try to make a sensible decision whether it is reasonably safe to attempt the crossing. What observations he should make, and what he should do for his own safety, while crossing the street (highway) (roadway) are matters which the law does not attempt to regulate in detail and for all occasions, but it does place upon him the continuing duty to exercise ordinary care to avoid an accident.
 
 ’’
 

 [10]
 

 “You are instructed that if you should find that the plaintiff at some point while crossing the street in question was, because of a brain concussion or other injury, deprived of his memory of the events that transpired thereafter, if there were any, then, and only then, you are instructed that, as to such events which took place between the point where Ms memory ceased and the happening of the impact in question the law presumes that the plaintiff in his conduct at the time immediately preceding the accident here in question was exercising ordinary care and was obeying the law. These presumptions are a form of prima facie evidence and will support findings in accordance therewith in the absence of evidence to the contrary. When there is other evidence that conflicts with such presumption it is the jury’s duty to weigh that evidence against the presumption and any evidence that may support the presumption and determine which, if either, preponderates. Such deliberations, of course, shall be related to and be in accordance with my instructions on the burden of proof.
 

 “You are reminded that these presumptions become operative if, and only if you shall have first found that the plaintiff sustained an actual loss of memory as herein defined.”