[Civ. No. 26937. Second Dist., Div. One. Apr. 9, 1963.]

LILLIE GAGE WILLIAMS, Plaintiff and Appellant, v. BARRY L. GOODMAN et al., Defendants and Respondents.

Henry Silver for Plaintiff and Appellant.

Kinkle, Rodiger, Graf & Dewberry, Parker, Stanbury, Reese & McGee, Charles A. Harrison and Donald H. Dewberry for Defendants and Respondents.

FOURT, J.—This is an action for personal injuries arising out of an automobile-pedestrian accident. Plaintiff Lillie Gage Williams (hereinafter sometimes referred to as "plaintiff") was struck in a marked crosswalk by an automobile driven by defendant Barry Goodman (hereinafter sometimes referred to as "Goodman") and owned by his employer, defendant Pacific Dental Supply Company, a corporation (hereinafter sometimes referred to as "Pacific").

Plaintiff appeals from the "judgment for the defendant Barry L. Goodman and against the plaintiff, based on the jury verdict returned June 8, 1962; the judgment on the pleadings for the defendant Pacific Dental Supply Company, granted May 31, 1962; the order reinstating the third affirmative defense of the defendant Pacific . . . to the Second Amended Complaint; the order denying plaintiff's motion to file the Second Amended and Supplemental Complaint against Pacific Dental Supply of California, dated December 21, 1961; the order of commissioner Clinton Rodda, assigning the above case for trial from the Central District in the City of Los Angeles to the Southwest District, in the City of Inglewood, of May 29, 1962."

Viewing the evidence in the light most favorable to the prevailing parties, a résumé of some of the facts is as follows: The suit arose out of an accident which occurred at approximately 5 p.m. on September 26, 1960, at the intersection of Santa Monica Boulevard and Cotner Avenue. Santa Monica Boulevard in the area with which we are concerned was a street approximately 80 feet wide running in a generally east-west direction. Cotner Avenue, a street approximately 40 feet wide, ran in a generally north-south direction. Santa Monica Boulevard was a main thoroughfare and heavily

traveled. There were no traffic control lights at the intersection. There was no traffic control device for east-west traffic on Santa Monica Boulevard. There was a boulevard stop sign on Cotner Avenue requiring vehicles to stop before crossing Santa Monica Boulevard. North-south streets to the east and west of Cotner were regulated by traffic lights; the street immediately to the east was Sepulveda, another main traffic artery. Immediately to the west of Cotner Avenue was the San Diego Freeway which carried traffic over Santa Monica Boulevard. An "on" ramp for the freeway entered from Cotner Avenue at Santa Monica Boulevard.

Plaintiff was employed at the telephone company located within the second block north of Santa Monica Boulevard and had been proceeding southbound on the sidewalk on the east side of Cotner Avenue. It was her intention to cross Santa Monica Boulevard to the south side and catch an eastbound bus. It was undisputed that plaintiff was in the crosswalk at the time she was struck by the automobile.

At the trial, the lane of travel for westbound traffic closest to the center of Santa Monica Boulevard was nominated lane number 1. There was one other lane to the north thereof identified as lane number 2. Defendant Goodman was proceeding westbound in lane number 1. In order to avoid repetition, other pertinent facts will be integrated into the body of the opinion under appropriate headings.

*Did the trial court err in ordering the reinstatement of the defense of the statute of limitations and in rendering a judgment on the pleadings in favor of defendant Pacific Dental Supply Company?*

The chronology of significant events with reference to the question is as follows:

*September 26, 1960*—Plaintiff pedestrian was injured in an automobile-pedestrian accident.

*October 3, 1960*—Plaintiff filed her complaint for personal injuries and damages. The complaint was captioned "Lillie Gage Williams, Plaintiff, vs. Barry L. Goodman, Doe I, Doe II, Doe III, Defendants." *This complaint did not attempt to state a cause of action against any fictitiously named defendants* (i.e. Does I through III). *The only allegations against any fictitiously named defendants are found in paragraph VII of the complaint* which provides as follows:

"The true names and capacities, whether individual, corporate, associate or otherwise, of defendants Doe I, Doe II, and Doe III, are unknown to the plaintiffs [*sic*], who therefore

sue said defendants by such fictitious names, and will ask leave to amend this complaint to show their true names and capacities when same have been ascertained.''

*June 23, 1961*—Defendant Pacific ''sued and served herein as Doe I'' filed its answer to plaintiff's complaint. In addition to denials, Pacific asserted the separate defense of plaintiff's contributory negligence.

*October 13, 1961*—Plaintiff filed a notice of motion for order allowing the filing of first amended complaint and the proposed first amended complaint. The first amended complaint attempted to assert a cause of action against defendant Pacific.

*November 15, 1961*—Plaintiff's motion was granted.

*November 21, 1961*—Defendants Pacific and Goodman filed an answer to the first amended complaint. Defendant Pacific, as a separate affirmative defense, alleged that the first amended complaint ''fails to state a cause of action against this defendant in that the original complaint filed by plaintiff herein on or about October 3, 1960, did not state a cause of action against this defendant and that the proposed first amended complaint by which plaintiff first attempts to state a cause of action against this defendant was filed more than one year after the happening of the accident in question and that thereby plaintiff's claim for personal injury and associated special damage is barred by the statute of limitations relating to such causes of action.''

*November 24, 1961*—Plaintiff filed a notice of motion to strike the statute of limitations defense from the answer to the first amended complaint. Plaintiff's motion was granted on December 6, 1961.

*December 27, 1961*—Plaintiff filed a second amended complaint (increasing amount of damages sought).

*January 15, 1962*—Defendants Pacific and Goodman filed their answer to plaintiff's second amended complaint. Defendant Pacific once again asserted the defense of the statute of limitations.

*January 16, 1962*—Plaintiff filed a notice of motion to strike the statute of limitations defense from the answer to the second amended complaint. Plaintiff's motion was granted on January 22, 1962.

*January 31, 1962*—The pretrial conference order was filed. It provides in pertinent part as follows:

''Defendant, Pacific Dental Supply Company, is sued herein as Doe I. The complaint was served on said defendant

within one year from date of the accident. The case is at issue on second amended complaint of plaintiff filed in December, 1961, and the answer of defendant thereto. The defense of statute of limitations, as set up in said answer has been stricken by order of the court pursuant to motion of plaintiff.

" . . . . . . . . . . . . .

"Defendants contend that one of the issues involved in the action is the question of whether plaintiff's second amended complaint is barred by the statute of limitations as to defendant Pacific Dental Supply. This issue has not been included by the court by reason of its having been stricken from the answer of defendant Pacific Dental Supply as set forth hereinabove."

*March 30, 1962*—Defendant Pacific filed a notice of motion to vacate ruling and reconsider motion previously filed and ruled upon (i.e. relative to the defense of the statute of limitations). Defendant's motion was denied on April 10, 1962.

*May 31, 1962*—The minute order bearing this date discloses the following in pertinent part:

". . . [i]n chambers motion of defendant Pacific Dental Supply to set aside the prior order striking the third affirmative defense and to reinstate the affirmative defense or in the alternative to amend his answer to include as an affirmative defense the statue [*sic*] of limitations relating to personal injury is argued and the motion to set aside the prior order and to reinstate the third affirmative defense is granted. *Motion of defendant Pacific Dental Supply for judgment on the pleadings except as to claim of property damage is argued and granted.* Plaintiff dismisses claim of property damage against Pacific Dental Supply." (Italics added.)

*June 26, 1962*—The judgment of dismissal in favor of defendant Pacific was entered.

The trial court did not err in ordering the reinstatement of the affirmative defense of the statute of limitations and in rendering a judgment on the pleadings in favor of defendant Pacific.

 It is established that where a defendant is designated by a fictitious name in an original complaint *and no attempt is made therein to state any cause of action against such defendant,* the statute of limitations is not tolled as to such defendant. If there is an attempt to assert a cause of action in an amended complaint against such defendant, the statute of limitations is computed from the date of the alleged

acts to the date of the filing of the amended complaint. (*Kolodziejski* v. *Hover,* 124 Cal.App.2d 731, 732-733 [269 P.2d 163] ; *Sullivan* v. *Wright,* 124 Cal.App.2d 836 [269 P.2d 671] ; *Gates* v. *Wendling Nathan Co.,* 27 Cal.App.2d 307 [81 P.2d 173].) ■■■ The fact that defendant Pacific filed an answer did not toll the statute of limitations. Nothing in defendant's answer raised the issue, which was not tendered by the complaint, of any actionable conduct on defendant's part. "Absent an actionable issue, we cannot see how the mere filing of an answer could affect the running of the statute." (*Stanley* v. *Kawakami,* 127 Cal.App.2d 277, 279 [273 P.2d 709].)

Plaintiff's reliance on *Austin* v. *Massachusetts Bonding & Insurance Co.,* 56 Cal.2d 596 [15 Cal.Rptr. 817, 364 P.2d 681] is misplaced. The *Austin* case in no wise stands for the proposition that the statute of limitations is tolled even though *no attempt* is made to assert any cause of action against a fictitiously designated defendant.

In *Austin* there was an attempt to assert a cause of action against a fictitiously designated defendant on the theory that said defendant had breached certain duties owed to plaintiff in the capacity of a broker. Subsequently, after the period within which an action could be commenced, plaintiff amended the complaint, naming defendant bonding company as one of the defendants originally sued by fictitious name, and pleading a cause of action against it for recovery on a surety bond (i.e. plaintiff changed his theory).

The Supreme Court held that notwithstanding the change in plaintiff's theory of recovery, the amendment was deemed to relate back to the filing of the original complaint because plaintiff sought recovery on the same general set of facts.

*Was plaintiff, as a matter of law, free from contributory negligence?*

The jury, by a nine to three vote, rendered its verdict in favor of "defendant Barry L. Goodman and against the plaintiff Lillie Gage Williams." After the jury's verdict was read the reporter's transcript discloses the following:

"The Court: Read the interrogatories.

"The Clerk: 'We, the jury, impaneled and sworn to try the above action, answer the individual questions propounded by the Court, as follows:

" '1.—Was the defendant in the above entitled action negligent? Yes.

" '2.—If you find that defendant was negligent, was that

negligence a proximate cause of any injury to the plaintiff?
Yes.

" '3.—Did you find that plaintiff was negligent? Yes.

" '4.—If you find that plaintiff was negligent, did you find
that the negligence contributed as a proximate cause of the
injury? Yes.' "

There was evidence that plaintiff was walking south-
bound on the sidewalk on the east side of Cotner at a fast
pace (described as a "gallop" by witness Yaros) and, with-
out pausing or looking in the direction of westbound oncom-
ing traffic (which included witness Chestney and defendant
Goodman), proceeded across Santa Monica Boulevard in the
crosswalk.

Plaintiff testified as follows in pertinent part:

"Q. By Mr. Dewberry: From the time you stepped off of
the curb there out into the street what way did you keep
your face or your line of vision? "A. I looked to my right.
I was looking towards Santa Monica. [i.e. west.]

"Q. At all times? A. Yes.

"Q. Up until the accident? A. Yes.

"Q. Well, am I correct in interpreting that to mean that
you did not look into this Lane No. 1 [i.e. lane in which
defendant Goodman was driving] to see if there was a car
there? A. Yes.

" . . . . . . . . . . . . .

"Q. Then, is it a true statement, Mrs. Williams, that you
never did see the car that hit you? A. Yes.

"Q. And it's also a true statement that you never looked
down the lane that that car was in? A. No. I didn't look."

Officer Ernest C. Soper, a police officer attached to the
Accident Investigation Division of the Los Angeles Police
Department, testified as follows in pertinent part:

"Q. Did you investigate an accident between a car and a
pedestrian at the intersection of Cotner and Santa Monica
Boulevard? A. Yes, I did.

"Q. And did you make a report on that? A. Yes, I did.

" . . . . . . . . . . . . .

"Q. Would you need the report to refresh your memory?
A. To repeat her [i.e. plaintiff's] statement as best I remem-
bered it at that time, at this time I would have to read it off
of this report.

"Q. All right, fine. Will you do that please, sir. A. Her
statement to me as obtained at the UCLA Hospital was, 'I was
crossing the street to catch the eastbound bus. As I stepped

from the curb, the north curb, the car closest to me stopped. I looked towards the bus,' indicating she looked to the west, 'which was coming from the west and started to wave to the driver. I guess I started running across the street so I wouldn't miss the bus. After I saw the first car stop I didn't look to see if there were any more cars coming or not.' "

The testimony of witness Letha Kleinsteuber was entered into the record in the form of reading the witness's deposition which had been taken for evidentiary purposes at Orangevale, California. This witness had been a passenger in an automobile headed east on Santa Monica Boulevard. The automobile was stopped on Santa Monica Boulevard to make a left turn (i.e. north) onto Cotner. The transcript discloses the following in pertinent part:

" 'Q.—. . . [i]n which direction had your automobile been traveling as you approached the scene of the accident? A.—We were going east toward Los Angeles and we were going to make a left-hand turn on Cotner.

" 'Q.—At the time of the accident were the lanes in the street designated in any particular way? A.—Yes, we were in the left-hand lane sitting there, waiting for the traffic to clear, the oncoming traffic. In fact the car that struck the girl and the one beside it.

" '. . . . . . . . . . .

" 'Q.—What were traffic conditions generally? A. Very heavy, about 5 :00 o'clock.

" '. . . . . . . . . . .

" 'Q.—As you were stopped? Where were you stopped? A.—Just on the angle, ready to make our left-hand turn in the left-hand lane . . .

" '. . . . . . . . . . .

" 'Q.—And your car was on an angle in preparation to make a left-hand turn? A.—Slight, yes.

" '. . . . . . . . . . .

" 'Q.—Did you see traffic westbound coming toward you? A.—Yes.

" 'Q.—What was the nature of the traffic? A.—Well, traffic was heavy and we were waiting for all the traffic to clear. There was [sic] two more cars, the one that struck the girl and one in the right-hand lane coming that we were waiting to clear before we made our turn.

" 'Q.—Did you see the woman who was injured prior to being hit? A.—Yes.

" '. . . . . . . . . . .

" 'Q.—Where was she when you first saw her? A.—She was down the street on the sidewalk on Cotner, oh, I would say about 25 or 30 feet.

" . . . . . . . . . . . .

" 'Q.—Was there anything that impressed this on your mind, this scene when you first observed the lady coming down the sidewalk? A.—Yes. She had on a bright yellow dress that attracted my attention and the fact that she was walking fast.

" 'Q. How would you describe her pace? A. Very rapid.

" 'Q.—Well, how would you describe her pace as she came off of the curb into this street? A.—The same way, all the way through.

" 'Q.—And when you first observed the two cars that were traveling west there on Santa Monica what was the relationship of the car at the curb lane [i.e. automobile driven by witness Chestney in lane number 2] to the relationship of the car in the lane closer to the center of the street [i.e. automobile driven by defendant Goodman in lane number 1]?

" . . . . . . . . . . . .

" 'A.—The one in the right lane [i.e. lane number 2] was just the car length ahead. The one in the left lane [i.e. lane number 1] was—its front bumper I would say was about even with the back bumper of the one in the right lane.

" . . . . . . . . . . . .

" 'Q.—Based upon your observation describe the stop of the automobile at the curb lane. A.—Well, he came to a quick stop to avoid hitting her.

" . . . . . . . . . . . .

" 'Q.—And at that time where was the car in the lane closer to the center of the street [i.e. lane 1]? A.—Well, he [i.e. defendant Goodman] was, as I say, right at the rear bumper of the other car. Then, of course, as he came on at the same speed she walked right past the other one and then he struck her.' "

It would serve no useful purpose to set forth additional portions of the reporter's transcript. Suffice it to say, this was a case of strongly disputed liability. The witnesses were not in accord as to what happened. The jury was compelled to test the testimony in the light of probability to find the truth.

Plaintiff asserts several theories in support of the proposition that she was, as a matter of law, free from contributory negligence.

■ *First*, it is asserted that plaintiff had the right to rely upon defendant Goodman's duties as a motorist. In making this contention plaintiff overlooks the condition precedent set forth in one of the instructions she requested and which the trial court gave—BAJI 138.2. This instruction provides as follows:

*"Every person who, himself, is exercising ordinary care,* has a right to assume that every other person will perform his duty and obey the law, and in the absence of reasonable cause for thinking otherwise, it is not negligence for such a person to asssume that he is not exposed to danger which can come to him only from a violation of law or duty by another person." (Italics added.)

Plaintiff apparently takes the position that because she was in a crosswalk she was absolved from any responsibility to exercise ordinary care [i.e. satisfies the condition precedent). This position cannot be sustained. It is stated in *Smith* v. *Sugich Co.,* 179 Cal.App.2d 299 [3 Cal.Rptr. 718] at page 311:

". . . [17] as said in *Jeffs* v. *LaGore,* 131 Cal.App.2d 181 (p. 185) [280 P.2d 140] :

" 'The fact that a pedestrian is in a crosswalk does not necessarily establish his freedom from negligence. [18] It is the duty of a pedestrian to exercise reasonable care while crossing a street in a marked crosswalk, and to continue to be alert to safeguard against injury, and such duty continues throughout his passage. (*O'Brien* v. *Schellberg,* 59 Cal.App. 2d 764 [140 P.2d 159].)' "

■ *Secondly,* plaintiff asserts that she was exercising reasonable care—that a pedestrian who is confronted with apparent danger from one side is not required to oscillate her head in both directions.

The gist of this contention is that the Kleinsteuber vehicle (i.e. the vehicle headed east on Santa Monica Boulevard which was stopped on an angle in preparation to make a left-hand turn) constituted an apparent danger and that plaintiff was therefore justified in not looking to see whether she was in danger from westbound traffic.

It cannot be said as a matter of law that the mere presence of the Kleinsteuber vehicle constituted sufficient justification for plaintiff's not looking to see whether she was in danger from westbound traffic. On the contrary, the Kleinsteuber vehicle (which had been proceeding east on Santa Monica Boulevard) was at all times in a stopped position turned for

a left turn and at no time gave any indication of proceeding through the intersection. It is not unreasonable to assume that the Kleinsteuber vehicle in fact should have been a warning to plaintiff that it was stopped yielding to oncoming traffic which was so close as to constitute an immediate hazard. If such westbound oncoming traffic constituted a hazard to the Kleinsteuber vehicle then *a fortiori* it constituted a hazard to plaintiff. (See Veh. Code, § 21801 subd. (a).)

■ *Thirdly,* it is asserted that plaintiff's failure to look in the direction of westbound traffic (i.e. to look east) was in no way the proximate cause of plaintiff's injuries and suggesting that had plaintiff looked and seen defendant Goodman's automobile the result would not have been different.

This contention is directly contrary to plaintiff's own testimony. The reporter's transcript discloses the following in pertinent part:

"Q. Now, then, as you were going across the street and while you were in this crosswalk here (indicating) and while you were in front of this car, the Chestney vehicle, were you walking or proceeding at such a slow pace that if you had looked over here you could have stopped without stepping into that No. 1 lane or were you going at such a fast pace that you couldn't have stopped if you would have wanted to? A. At that time I could have stopped anything I was doing because I could have stopped.

" . . . . . . . . . . . . .

"Q. Were you going slowly enough that if you had looked over here and seen a car approaching the crosswalk that you could have stopped before stepping in front of him? A. Why yes, I could have stopped if I had been thinking somebody was going to hit me. I would have.

"Q. But while you were out here you never even glanced over this way. A. No. I looked to my right [i.e. west]."

*Did the trial court commit prejudicial error in refusing to give plaintiff's requested jury instruction BAJI 201-A?[1]*

---

[1]"Instruction Refused

"No. 201-A

"Although as to a roadway locality such as that involved in this case, a pedestrian has a right to cross the road at any point, these factors of consideration enter into the question of what conduct is required of him in the exercise of ordinary care:

"1.—If he crosses within a marked crosswalk, or at an intersection within a crosswalk, whether marked or not, the law requires the drivers of all other vehicles to yield the right of way to him,

Plaintiff asserts in her brief that the instruction should have been given because it "distinguishes the situation of a pedestrian in the crosswalk from one outside the crosswalk." That had it been given, "the jury might have realized that the *standard of care* of a pedestrian in a marked crosswalk is different from the standard outside such crosswalk." (Italics added.)

■ Initially it must be noted that the standard of care of a pedestrian in a marked crosswalk is not different from the standard of care outside such a crosswalk. In either instance it is incumbent upon the pedestrian to exercise ordinary care. However, whether or not a pedestrian is in a crosswalk would have a bearing on the amount of caution required to constitute ordinary care and upon the determination as to who had the right of way.

The evidence is uncontradicted that plaintiff was within the crosswalk at the time of the accident. It is clear that plaintiff had the right of way. The jury was instructed that Vehicle Code, section 21950, as applied to the intersection of Cotner and Santa Monica Boulevard "provided that the driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk."

■ Since the evidence is uncontradicted that plaintiff was within the crosswalk at the time of the accident, the trial court did not err in refusing to instruct the jury with reference to a pedestrian's duty to yield the right of way when crossing in any other place. (See *Smith* v. *Sugich Co.*, 179 Cal.App.2d 299 [3 Cal.Rptr. 718].) There can be no error in refusing to instruct on a proposition of law which has no application to the facts of the case.

Plaintiff next asserts a number of purported errors under

"2.—If he crosses at any other place, the law requires him to yield the right of way to all vehicles on the roadway so near as to constitute an immediate hazard, although this requirement does not relieve the driver of a vehicle from the duty to exercise ordinary care for the safety of any pedestrian upon a roadway.

"3.—The amount of caution required to constitute ordinary care increases as does the danger that a reasonably prudent person, in like position, would apprehend in the situation. (For example heavy vehicular traffic, fast traffic, poor visibility, obstructions to view, a wet street—any of these or any other perceivable factor increasing the hazard, increases the amount of caution which an ordinarily prudent person would use.)

"Requested by Plaintiff (X)
"Refused (X)

"Instruction 201-A bears the following notation: 'Not entirely applicable and covered by other instruction.')"

the general heading of *whether any irregularities and errors of law occurred which prevented plaintiff from having a fair trial.*

*First,* the two contentions relative to purported errors occurring during the *voir dire* examination of the jurors are without merit. ▮▮▮ (a) It was not error to permit *voir dire* examination to ascertain whether prospective jurors had been involved in experiences similar to the factual situation presented in the within action. ▮▮▮ (b) Nor did the trial judge err in restricting plaintiff in her attempt to educate the jurors as to what the law was under the guise of questioning as to qualifications. The record discloses that the trial court acted properly in restricting both counsel from explaining in detail each proposition of law favorable to his position.

▮▮▮ *Secondly,* the trial court did not err in restricting plaintiff in her attempt to discuss the law during her opening statement. What is stated in 88 C.J.S., Trial, section 161, page 314, is pertinent:

*"Purpose of opening statement.* The purpose of the opening statement is to inform the jury in a general way of the nature of the action and defense, to advise them of the facts relied on by the party to make up his right of action or defense, to define the nature of the questions involved, and advise them of the issues to be tried and the facts intended to be proved, so as to enable them to understand the case to be tried; and the opening statement is not for the purpose of discussing questions of law." (Italics indicated.)

▮▮▮ *Thirdly,* the trial judge did not commit prejudicial error when he made a comment while sustaining plaintiff's objection to a question asked of plaintiff during cross-examination. The reporter's transcript discloses the following in pertinent part:

"Q. . . . [D]id you tell an investigating officer that, 'I looked towards the bus which was coming from the west and started to wave to the driver'? A. I don't remember.

"Q. By that you mean that you may have made the statement, you may not have made the statement; is that fair? A. I didn't see a policeman while I was lying in the street. No policeman came to me.

"Q. Where was the policeman when he first talked to you? A. The first time I think I might have seen a policeman was at UCLA Medical Center.

"Q. All right, and at that time — A. I don't know exactly what went on.

" . . . . . . . . . . . . .

"Q. Just so we can correctly state the questions for the record let me read you this statement: 'I looked towards the bus which was coming from the west and started to wave to the driver.'

"Did you make that statement? A. I don't know.

"Q. And by that can we say that you may have made it, you may not have made it? A. I might have and I might not have. I don't remember.

"Q. Did you further tell him, 'I guess I started running across the street so I wouldn't miss the bus'? A. I don't remember.

"Q. And with reference to that statement can we say that you may have made that statement and you may not have made that statement.

"Mr. Silver: I object to this.

"The Witness: I don't know.

"Mr. Silver: The answer, 'I don't remember' explains itself.

"The Court: *If you are satisfied that it does, I am, Counsel.*

"Sustained." (Italics added.)

With reference to the emphasized portion of the transcript plaintiff asserts in her brief that by "this gratuitous remark the judge not only destroyed the effect of his own ruling, but clearly implied that he was not satisfied with the testimony . . . and the jury undoubtedly took a cue from him."

Plaintiff concedes and we agree that the "point itself was minor."

Plaintiff's remaining contentions have been examined and found to be without merit.

The judgments and orders are and each is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied April 29, 1963, and appellant's petition for a hearing by the Supreme Court was denied May 29, 1963.