# CHARLESTON.

### STATE *v.* KELLY MESSER

### (No. 5198)

### Submitted May 20, 1925.   Decided May 26, 1925.

JURY—*Juror is Incompetent to Try Criminal Cases if Opinion is Such He Could Not Give Due Weight to Presumption of Accused's Innocence or Would Not Acquit Unless Accused Should Prove Himself Innocent.*

A juror is incompetent in a criminal case if his opinion is of such a decided character that he could not give due weight to the presumption of the innocence of the accused, or would not acquit unless the defendant should prove himself innocent.

HATCHER, JUDGE, dissenting.

(Juries, 35 C. J. § 386).

(Note: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi).

Error to Circuit Court, Fayette County.

Kelly Messer was convicted of owning, operating, maintaining, possessing, and, having an interest in a moonshine still, and he brings error.

*Reversed and remanded.*

*Hubard & Bacon, C. E. Mahan, Jr.,* and *John T. Simms,* for plaintiff in error.

*Howard B. Lee,* Attorney General, *R. A. Blessing,* Assistant Attorney General, and *W. G. Brown,* Commissioner of Prohibition, for the State.

LITZ, JUDGE:

The defendant prosecutes error to the judgment of the circuit court, sentencing him to four years confinement in the penitentiary upon the charge of owning, operating, maintaining, possessing and having an interest in a moonshine still.

December 22, 1922, prohibition officers, searching the home of Jess Barker, in the City of Montgomery, Fayette County, found therein sixty gallons of moonshine liquor, a still, and other articles appurtenant to a moonshine operation. After his arrest, apparently with the view of obtaining immunity from prosecution, Barker told the officers that the defendant was, and had been during the operation of the still in his house, a partner in the business. The defendant and Barker were indicted jointly for the offense in January, 1922. Barker, however, was never tried and, having been called by the State as a witness in this case, no doubt claims immunity from further prosecution under section 33, chapter 32-A, and section 25, chapter 159, Code, although he had been operating the still in his home for more than two years. Barker, his wife, son and brother testify that the defendant was interested in the operation of the still; some of them stating that he had furnished the parts for the apparatus. Another witness, a former tenant and, as it is claimed, an enemy, of defendant, also testified that the defendant had told him he was making liquor at Barker's house. The defendant denied all connection with the still, or its operation,

and offered other testimony to establish his defense. As the evidence presents an issue properly determinable by the jury, it is unnecessary to analyze or narrate the same.

The following are assigned as errors committed by the trial court during the progress of the trial:

(1)   The refusal to strike from the panel of twenty jurors the names of R. H. Thomas and Philip Atkinson.

Juror Thomas testified on his *voire dire* that he could not say whether the mere fact of defendant's indictment for violating the prohibition law would have any weight with him in making up his verdict; further stating, however, that he would not convict the defendant without being convinced of his guilt beyond a reasonable doubt.

After stating that he had no opinion as to the guilt or innocence of the accused, the juror Atkinson said:

> "Well, people breaking the prohibition laws —a man breaking the prohibition law most any one would have a prejudice against him, but I believe that I could give the man a fair and square deal myself."

Thereupon his examination proceeded as follows:

> By Mr. Bacon, attorney for the defendant:
> "Q. Are you sensible of any prejudice now against the defendant because he is charged with violating the prohibition law?
> "A. No, not against him personally, no, sir.
> "Q. Do you have or are you sensible of any prejudice against persons charged with violations of the prohibition law?
> "A. Well, to some extent, yes. *If he could prove himself not guilty with evidence, that would change my mind.*
> "Q. (Interposing): Do you feel that you would require him to prove himself innocent of the charge?
> "A. Yes, sir, *if he can prove himself innocent of the charge I would give him a fair and square deal.*
> "Q. In other words, do you feel that you have a sense of prejudice against him because he has been indicted for a violation of the prohibition law?

".A. No, sir.

"Q. Do you have a general feeling of prejudice against people charged with violations of the prohibition law?

".A. Yes, I have.

"Q. Would you, if selected as a juror, go into the jury box with that prejudice in your mind?

"A. No, I couldn't say that I would.

"Q. Well, you are sensible now of that prejudice, are you? You are sensible now of a prejudice against persons charged with a violation of the prohibition law?

"A. Yes, sir.

"Q. You mean that you would lay that prejudice aside voluntarily? Is that what you mean to say?

"A. Yes, sir.

"Q. Or would it require some evidence in order for you to do that?

"A. Yes, sir, it would require evidence.

"Q. Before you would lay aside that prejudice?

"A. Yes, sir.

"MR. BACON: I believe that's all I want to ask him. We want a formal objection to this man."

Examination by the Court:

"Q. Mr. Atkinson, would you convict a man because he was charged with a violation of the prohibition law quicker than you would if he was charged with any other offense?

"A. No, sir.

"Q. Would you try a case of this character just like you would try a man charged with any other crime?

"A. Yes, sir.

"Q. Would you have a prejudice against a man who was charged with murder?

"A. Well, I am prejudiced against any man that would violate the law.

"Q. You would not be prejudiced against a man charged with a violation of the prohibition laws any more so than you would against a man charged with any violation of the law?

"A. No, sir.

"THE COURT: I think this jury is qualified. You may make up your jury from these twenty."

In *State* v. *Schnelle*, 24 W. Va. 767, 782, it was said:

"Unless the proposed juror understands his own mind on the question and can promptly say that he is at that time free from prejudice, and that his mind is entirely free to pass upon the guilt or innocence of the accused upon the evidence submitted to him as such juror, he is not a competent juror and should be ordered to stand aside."

The object of the law is to secure jurors whose minds are wholly free from bias or prejudice for or against the accused. *State* v. *Hatfield*, 48 W. Va. 561. This is the very basis for the great weight and sanctity given to their verdicts.

Those who administer the law must respect its wise and salutary rules of procedure in order that like respect for law and order may be inspired in others.

"A juror is incompetent in a criminal case if his opinion is of such a decided character that he could not give due weight to the presumption of the innocence of the accused, or would not acquit unless the defendant should prove himself innocent." 35 C. J. 352.

The juror Atkinson was clearly incompetent. That he would require all persons charged with crime to prove themselves innocent does not lessen his unfitness; nor is the error complained of cured by the objectionable juror having been stricken from the panel of twenty through a peremptory challenge. "A person charged by indictment with felony is entitled under the law to a panel of twenty jurors, each and all of whom shall be 'free from exception,' from which panel the jury for the trial of the case is to be selected under section 3, chapter 159, Code." *State* v. *Johnson and Devinney*, 49 W. Va. 684.

The recent case of *State* v. *Larue*, pending on petition for rehearing, is cited by the prosecution to sustain the qualification of the two jurors under consideration. The juror whose qualification was questioned in that case stated that he had an impression from reports concerning the accusation against the defendant which would require evidence to remove; but that he was not sensible of any bias or prejudice

for or against the accused of such nature as would prevent him from receiving both the evidence of the State and the evidence for the defendant and rendering a true and impartial verdict. It was there held that the trial court properly refused to reject the juror. Under that ruling we think the juror Thomas was clearly competent; but it in no wise sustains the contention of the State that the juror Atkinson was also qualified.

(2) H. H. Williams, a prohibition officer, was permitted to testify for the State that at night, September 9, 1922, he stopped an automobile on a public road in Fayette County in which the defendant, his son-in-law and two other men were riding; that liquor was dripping from the car where a glass container had been broken, and a forty-five automatic Colt's revolver was lying by one of the front wheels; that defendant later told him the liquor was his and pled guilty in the Federal Court of its possession. This testimony is objected to as tending to establish the bad character of defendant and the commission of another crime.

The defendant states on his examination in chief that he obtained at the home of Jess Barker during July or August, 1922, one pint, and in November of the same year twelve gallons, of moonshine liquor which he purchased of Mrs. Barker. In view of this testimony the defendant could not have been prejudiced by evidence that he had been found in possession of moonshine liquor in September. We are of opinion, however, that the evidence of the witness relating to the pistol was improper and prejudicial. It does not come within any exception to the rule which excludes evidence of other crimes charged against the defendant.

Having concluded that no one of the remaining assignments of error is well founded, they will not be considered.

The judgment of the circuit court is reversed, the verdict of the jury set aside, and a new trial awarded the defendant.

*Reversed and remanded.*

HATCHER, JUDGE (dissenting):

The majority opinion finds no fault with the instructions given or refused at the trial·of this case. . Its only serious criticism of the vast amount of evidence herein is the admission of the testimony of Officer Williams that he found a pistol in the road, near an automobile in which were defendant and several others. This evidence was given in answer to a general request of the officer to describe the occurrence. An objection to this request was properly overruled, as the court could not have foreseen that the answer of the officer would include evidence about the pistol. Counsel for defendant evidently considered this testimony of little consequence, as there was no motion made to exclude it. The defendant stated that it was not his pistol, and that he did not throw it where it was found. I fail to see how the evidence of a pistol in the road could have in any way prejudiced the jury in arriving at its verdict.

Venireman Atkinson, of whom defendant complains, was stricken from the panel and was not one of the twelve men who found him guilty. It is true, as stated in the majority opinion, that this venireman said he had a general feeling of prejudice against violators of the prohibition laws. In answer to the question ''Do you feel that you would require him to prove himself innocent of the charge?'' he replied, ''Yes sir, if he can prove himself innocent of the charge I would give him a fair, square deal.'' This answer does not, in my opinion, warrant the construction given it in the majority opinion when considered with the other answers of the venireman. He also stated that he did not know the accused; that he had not formed any opinion, and did not then have any opinion as to the guilt or innocence of the accused; that he was not then sensible of any prejudice personally against the defendant; that he would·lay aside his general prejudice against violators of the prohibition law if selected as a juror, and would try a case of this character just as he would try a man charged with any other crime.

After hearing and considering the statements of this

venireman, the trial court concluded that he was qualified to act as a juror.

> "A juror is not disqualified by reason of general bias entertained against a class of actions, where it appears from his testimony that he can lay aside that prejudice, and, uninfluenced by it, try the cause at issue solely upon the evidence and the instructions of the court as to the law."

35 C. J. p. 330, par. 353.

With due deference to the opinion of my associates, it seems to me that the responses of the venireman brought him within the foregoing rule. The trial judge in this case is a most careful, able, and conscientious jurist. I think this court could safely trust the competency of this venireman to his judgment.

The testimony of witnesses for the State, not shown to be unfriendly to or hostile to defendant, overwhelmingly support the verdict. By this verdict, the defendant has been stripped of the presumption of innocence with which the law theretofore had generously cloaked him. His own admissions show him to have been a law-breaker of long standing, and a fugitive from justice. He points to no substantial error, but asks a reversal of this case on bare technicalities. Only by the aid of imagination can a court attach error to his trial. He was entitled to a fair trial no matter how lawless may have been his prior conduct. But after conviction, a court should certainly not strain constructions or invoke tortuous hypotheses to favor such as he. Reversals of cases similar to this one on harmless technical errors caused the terrible arraignment of a criminal trial in this country by Chief Justice Taft as being "a game of chance, with the chances in favor of the criminal."

There is no objection to the law stated in the syllabus of the majority opinion, but I respectfully dissent from its application to this case as made therein.