PEOPLE *v.* McCAGER.

1. HABEAS CORPUS—NATURE OF WRIT.

The ancient writ of habeas corpus, a restraint upon governmental despotism, has been inherited full grown as it was known in England in 1789.

2. SAME—PURPOSE OF WRIT.

Habeas corpus is a civil proceeding the main purpose of which is to cause the release of persons illegally confined, to inquire into the authority of law by which a person is deprived of his liberty (CL 1948, § 637.1 *et seq.*).

3. SAME—CIVIL PROCEEDING.

Application for the writ of habeas corpus is not made in the criminal proceedings but in new and independent civil action instituted to enforce a civil right, the right to personal liberty (CL 1948, § 637.1 *et seq.*).

4. SAME—DISCHARGE.

The effect of a successful application for a writ of habeas corpus is to obtain discharge of applicant from custody even though he be held under criminal process, as the writ of habeas corpus is of paramount authority over all other writs (CL 1948, § 637.1 *et seq.*).

5. SAME—CUSTODY OF PRISONER.

The authority under which an original commitment of an applicant for habeas took place is superseded upon the return of the writ and production of the body of the party suing it out, the safe-keeping of the prisoner being entirely under the con-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 25 Am Jur, Habeas Corpus § 3.
[2, 3] 25 Am Jur, Habeas Corpus §§ 11, 12.
[4] 25 Am Jur, Habeas Corpus § 157.
[5, 6] 25 Am Jur, Habeas Corpus § 148.
[7] 3 Am Jur, Appeal and Error § 812.
[9] 20 Am Jur, Evidence § 533.

trol and direction of the court to which the return is made, and he may be brought before the court from time to time until it is determined whether he shall be discharged or absolutely remanded (CL 1948, § 637.1 *et seq.*).

6. SAME—CUSTODY FOLLOWING ISSUANCE OF WRIT.

Defendant's liberty was the exclusive responsibility of the judge who issued writ of habeas corpus after defendant was produced in court on the day following his arrest, in response to the writ of habeas corpus and until final hearing thereon, irrespective of the nature of his detention before he was first produced in court in response to the writ (CL 1948, § 637.1 *et seq.*).

7. CRIMINAL LAW—HABEAS CORPUS—MOTION TO QUASH INFORMATION —QUESTIONS REVIEWABLE.

No opinion on the propriety of the 2 adjournments of the hearing on writ of habeas corpus is expressed on granted leave to appeal from order denying motion to quash information charging defendant with first-degree murder, where the habeas corpus proceedings are not before the Supreme Court for review (CL 1948, § 637.1 *et seq.;* Court Rule No 60, § 1 [b] [1945]).

8. SAME—MOTION TO QUASH INFORMATION—CONFESSION—HABEAS CORPUS.

Motion to quash information, charging defendant with first-degree murder, based upon his alleged illegal detention at time his confession was obtained, was properly denied, where at such time he was being detained at the direction of the judge who had issued a writ of habeas corpus pending his determination thereof (CL 1948, § 637.1 *et seq.*).

9. SAME—ADMISSIBILITY OF CONFESSION.

Questions as to the admissibility of an alleged confession to first-degree murder, after affirmance of order denying motion to quash information, are to be resolved by trial judge if the confession was otherwise inadmissible than because obtained while he was being detained pursuant to direction of judge who had issued writ of habeas corpus pending such judge's final determination thereof, or, if questions of fact must be resolved, by jury under proper instruction of the trial judge (CL 1948, § 637.1 *et seq.*).

Appeal from Recorder's Court of Detroit; O'Hara (John P.), J.  Submitted January 11, 1962. ( Docket No. 83, Calendar No. 49,121.)  Decided July 2, 1962.

Edward McCager, charged with murder, appeals from denial of motion to quash information. Affirmed.

*Frank J. Kelley,* Attorney General, *Joseph B. Bilitzke,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina, Angelo A. Pentolino,* and *Dominick R. Carnovale,* Assistant Prosecuting Attorneys, for the people.

*Henry Heading,* for defendant.

Souris, J.  By this appeal on leave granted we review denial of defendant's motion to quash an information charging murder in the first degree, defendant's claim being that his ·confession, solely upon which the information was based, was inadmissible in evidence against him.  Neither at the preliminary examination, nor at the hearings on defendant's motion to quash, was there offered any evidence that his confession was involuntarily extracted from him by physical or psychological brutality.  Instead, defendant relies upon the claim that his detention for 4 days after arrest without a warrant and prior to arraignment was for the manifest purpose of affording the police an opportunity to extract from him the confession which he ultimately made and, therefore, that the confession was inadmissible as a matter of law within our ruling in *People* v. *Hamilton,* 359 Mich 410, because extracted from him during a period of unlawful detention.

Two years ago, in *People* v. *Hamilton, supra,* at p 417, this Court unanimously held that "an unnecessary and so unlawful delay of compliance with

either of said sections 13 and 26,[*] when done for prolonged interrogatory purposes and without proven justification of the delay, renders involuntary and so inadmissible whatever confessional admissions the detained person may have made while so unlawfully detained."

Thus Michigan became the first State to adopt the exclusionary principle announced in *McNabb* v. *United States,* 318 US 332 (63 S Ct 608, 87 L ed 819), which the Federal courts are required to follow. See *Culombe* v. *Connecticut,* 367 US 568, 600 (81 S Ct 1860, 1878, 6 L ed 2d 1037, 1056), footnote 53 of Mr. Justice Frankfurter's opinion; 7 Wayne L Rev 51, 60; and *People* v. *Lundberg,* 364 Mich 596, 604.

Our decision in *Hamilton,* adopting the exclusionary principle of *McNabb,* was planted not alone on the statutory requirements cited, but also upon Michigan's own constitutional guarantee of due process. Const 1908, art 2, § 16. By guarding against "actual or inferential judicial sanction of procedures which are violative either of section 13 or section 26," we also sought to assure an accused "the process that is due him," p 419.

This appeal comes to us before trial by motion designed either to avoid trial entirely or to insure that, if a trial is held, defendant will not be put in jeopardy of conviction of first-degree murder by the use of a confession alleged by him to be inadmissible in evidence. Normally, when confessions are claimed to be inadmissible because obtained

---

* CL 1948, §§ 764.13 and 764.26 (Stat Ann 1954 Rev §§ 28.872 and 28.885). Section 13, at the time of *Hamilton* and at the time of the events in this case of McCager, read:

"A peace officer who has arrested a person without a warrant must without unnecessary delay, take the person arrested before the most convenient magistrate of the county in which the offense was committed, and must make before the magistrate a complaint, stating the offense for which the person was arrested."

Section 13 was subsequently repealed by PA 1961, No 44, effective May 20, 1961.

against the confessor's will by force, or threat of force, actual or more subtle, there are present disputed factual issues appropriately left for jury determination at the time of trial. *People v. Barker,* 60 Mich 277 (1 Am St Rep 501); *People v. Owen,* 154 Mich 571 (21 LRA NS 520); *People v. Prestidge,* 182 Mich 80; *People v. Biossat,* 206 Mich 334; *People v. Foster,* 211 Mich 486; *People v. Podolski,* 332 Mich 508, and opinion for affirmance in *People v. Roberts,* 364 Mich 60, 61. What we have here, however, is a confession claimed to be made inadmissible not by physically or psychologically oppressive tactics by which it was involuntarily extracted from defendant, but rather, solely by reason of defendant's allegedly unlawful detention during which he confessed.

On the day following defendant's arrest, an attorney apparently hired in his behalf caused to be issued a writ of habeas corpus, in obedience to which the police produced defendant before Judge John A. Ricca, one of the judges of the recorder's court for the city of Detroit. The record discloses that at the police officers' request, Judge Ricca adjourned the hearing until the following morning, a Saturday, to give the police additional time to conduct their investigation concerning a conflict between defendant's denial that he had been in the vicinity at the time of the crime and other information possessed by the police which we are told indicated that he had been there the night before the morning of the murder. On Saturday, the adjourned hearing on the writ was again adjourned an additional 48 hours until the following Monday morning. This adjournment resulted, we are told, because the police officers informed the judge that defendant had named another person in whose company he was when he last saw the victim and that the police had not had

an opportunity to question that person, although he had been arrested.

Many of our constitutional guardians of liberty were conceived at our country's birth out of a felt need of our forebears for new restraints upon governmental despotism. The ancient writ of habeas corpus, however, was so fundamental to their notions of an ordered society that it was inherited full grown as it was known in England in 1789. *Stidham* v. *Swope,* 82 F Supp 931. Alexander Hamilton ranks it together with the prohibition of *ex post facto* laws in our Federal Constitution as the greatest securities against the "most formidable instruments of tyranny". The Federalist Papers, No 84.

Habeas corpus is a civil proceeding the main purpose of which is to cause the release of persons illegally confined, to inquire into the authority of law by which a person is deprived of his liberty. CL 1948, § 637.1 *et seq.* (Stat Ann § 27.2244 *et seq.*), and *Goetz* v. *Black,* 256 Mich 564 (84 ALR 802). Application for the writ of habeas corpus is not made in the criminal proceedings; it is made in a new and independent civil action instituted to enforce a civil right, the right to liberty.

"The writ of habeas corpus is the remedy which the law gives for the enforcement of the civil right of personal liberty. Resort to it sometimes becomes necessary, because of what is done to enforce laws for the punishment of crimes, but the judicial proceeding under it is not to inquire into the criminal act which is complained of, but into the right to liberty notwithstanding the act. Proceedings to enforce civil rights are civil proceedings, and proceedings for the punishment of crimes are criminal proceedings. In the present case the petitioner is held under criminal process. The prosecution against him is a criminal prosecution, but the writ

of habeas corpus which he has obtained is not a proceeding in that prosecution. On the contrary, it is a new suit brought by him to enforce a civil right, which he claims, as against those who are holding him in custody, under the criminal process. If he fails to establish his right to his liberty, he may be detained for trial for the offence; but if he succeeds he must be discharged from custody. The proceeding is one instituted by himself for his liberty, not by the government to punish him for his crime." *Ex parte Tom Tong,* 108 US 556, 559, 560 (2 S Ct 871, 27 L ed 826).

The place of the writ of habeas corpus in the arsenal of free men dedicated to the preservation of their liberties is guaranteed, "unless when in cases of rebellion or invasion the public safety may require" its suspension. United States Constitution, art 1, § 9, and Const 1908, art 2, § 11. Its power is supreme; it is of paramount authority over all other writs. 39 CJS, Habeas Corpus, § 87, citing *People, ex rel. Wayman,* v. *Zimmer* (1911), 252 Ill 9 (96 NE 529), and *Ex parte Dodd* (1952), 72 Idaho 351 (241 P2d 359).

At the common law, upon return to a writ of habeas corpus custody of the prisoner thereafter passed to the judge who issued the writ. In 1871, in *Barth* v. *Clise,* 79 US 400 (20 L ed 393), the United States supreme court said (p 402):

"By the common law, upon the return of a writ of habeas corpus and the production of the body of the party suing it out, the authority under which the original commitment took place is superseded. After that time, and until the case is finally disposed of, the safe-keeping of the prisoner is entirely under the control and direction of the court to which the return is made. The prisoner is detained, not under the original commitment, but under the authority of the writ of habeas corpus. Pending the hearing he may be bailed *de die in diem,* or be re-

manded to the jail whence he came, or be committed to any other suitable place of confinement under the control of the court. He may be brought before the court from time to time by its order until it is determined whether he shall be discharged or absolutely remanded. *King* v. *Bethel,* 5 Mod 19 (87 Eng Rep 494); Bacon Abridgment, Habeas Corpus, B13; *Anonymus,* 1 Vent 330 (86 Eng Rep 213); *Sir Robert Peyton's Case,* 1 Vent 346 (86 Eng Rep 223); Hurd, Habeas Corpus 324."

Hurd, Habeas Corpus (2d ed), p 319, the same passage cited in *Barth, supra,* put it this way:

"Pending the examination or hearing, the prisoner, in all cases on the return of the writ, is detained, not on the original warrant, but under the authority of the writ of habeas corpus. He may be bailed on the return *de die in diem,* or be remanded to the same jail whence he came, or to any other place of safekeeping under the control of the court or officer issuing the writ, and by its order brought up from time to time till the court or officer determines whether it is proper to discharge or remand him absolutely.

"The King's Bench may, pending the hearing, remand to the same prison or to their own, the Marshalsea. The efficacy of the original commitment is superseded by this writ while the proceedings under it are pending, and the safekeeping of the prisoner is entirely under the authority and direction of the court issuing it, or to which the return is made.

"In several of the States it is provided by statute that the court may make such order for the safekeeping of the prisoner, pending the hearing, as they may judge expedient."

See, also, *Stallings* v. *Splain* (1919), 253 US 339 (40 S Ct 537, 64 L ed 940), and 25 Am Jur, Habeas Corpus, § 148.

In this State, CL 1948, § 637.33 (Stat Ann § 27-.2276), provides:

"Until judgment be given upon the return, the court or officer before whom such party shall be brought, may either commit such party to the custody of the sheriff of the county in which such court or officer shall be, or place him in such care, or under such custody, as his age and other circumstances may require."

With reference to an almost identical Wisconsin statute, the United States supreme court in *Barth* v. *Clise, supra,* said it was in accordance with the common law and that (p 403):

"The entire responsibility for the safekeeping of the prisoner under this statute rests upon the officer before whom the prisoner is brought pursuant to the writ."

From the foregoing, we conclude that once McCager was produced in court on the day following his arrest in response to the writ of habeas corpus and until final hearing on the writ, McCager's liberty was the exclusive responsibility of the judge who issued it. The legality of McCager's detention in the interim depended not upon the facts claimed to have justified his original commitment (determination of the legal sufficiency of which was the purpose of the writ) but, rather, upon the superior authority of the habeas corpus. Whatever the nature of his detention before he was first produced in court in response to the writ, thereafter and at the time of his confession, McCager's detention was, in the words of *Barth* v. *Clise, supra,* "under the authority of the writ of habeas corpus."

We do not here review the proceedings on the writ. Our appellate jurisdiction for that purpose has not been invoked by application under Court Rule No 60, § 1(b) (1945). See *In re Brock,* 144

Mich 42. The record of the habeas corpus proceeding is not before us. Accordingly, we express no opinion on the subject of the propriety of the 2 adjournments of the hearing on the writ.

For the purpose of this appeal from denial of defendant's motion to quash the information, based upon the claimed inadmissibility of defendant's confession on the ground that it was obtained during a period of illegal detention, we hold that his detention at the time the confession was made was not unlawful and, therefore, defendant's motion to quash the information was properly denied.

There remains only to say that if, in the course of trial, it is determined judicially that the defendant's alleged confession was otherwise inadmissible, admission thereof in evidence will be denied by the trial judge or, if questions of disputed fact must be resolved, by the jury under proper instruction by the trial judge according to the procedural rules to which this Court has adhered since *People* v. *Barker, supra,* was decided.

Affirmed.

Carr, C. J., and Kelly, Kavanagh, and Otis M. Smith, JJ., concurred with Souris, J.

Black, J. (*concurring*). I agree fully with Mr. Justice Souris, yet would add a few sentiments concerning a recurrently misunderstood procedural aspect of this and like cases.

As in *People* v. *Roberts,* 364 Mich 60, 65, a question of admissibility of evidence is primarily before us. In *Roberts* 4 present members of the Court (Justices Dethmers, Carr, Kelly, and Black) stressed the procedural point in these words (p 61):

"Defendant cites *People* v. *Barker,* 60 Mich 277 (1 Am St Rep 501), and *People* v. *Prestidge,* 182

Mich 80, for the proposition that the question whether a confession was voluntary is for the court, if the matter is clear and the testimony on the subject is undisputed, but if there is ground for doubt, the court may leave it to the jury to determine whether the confession should be considered. This is their holding. In both cases cited, however, the trial had been had, resulting in convictions. Here there has been no trial. When it is had there will be time enough for the trial court, as the question arises, to determine, on the state of the record then before it or on such further testimony on the subject as may then be adduced, whether the voluntariness of the confession should then be decided by the court or left for jury determination. From the court's ruling at such time, opportunity for application for leave to appeal will still be available."

If in the course of trial it is determined judicially that the alleged confession of this apparently intelligent adult defendant was involuntary within rules considered in *People* v. *Hamilton,* 359 Mich 410, admission thereof in evidence will be denied by the trial judge. If the adduced proof leaves the question in doubt, the jury will be instructed to determine the question of voluntariness and so the question of admissibility. Then and only then, as firmly suggested in *Roberts,* may such crucial questions be settled properly in conformity with current Michigan practice.

There may, of course, be circumstances under which it is proper to determine such a question upon pretrial motion to quash and discharge.* But no

---

* Such as a flat statement by the prosecutor that no proof of voluntariness—over and above that which is before the court on such motion—will be offered at trial; or a similar admission or declaration by the prosecutor that the court ultimately would have to deny admission of the questioned confession; or where the prosecutor offers no proof, weak or otherwise, countering the defendant's amply persuasive showing of unlawful detention and unlawful interrogation resulting in such a confession.

such circumstances are present in this case. Here it appears beyond question that an able-bodied male brutally murdered one Mary Cooper. And the record leaves one in doubt whether the defendant was *unlawfully* detained or *unlawfully* interrogated prior to or when, as testified by Officer Clark, he confessed as related here. In short, the record so far discloses no "totality of circumstances" upon which it may be said that the defendant's confession was involuntary as a matter of law; or that it was extracted or obtained, again as a matter of law, by unlawful means.

When the question of admissibility of an offered confession came first to the considered attention of this Court (*People* v. *Barker,* 60 Mich 277, 294–300 [1 Am St Rep 501]), procedural rules of tried value were adopted. We refer the profession thereto, noting from *Barker* and the *Roberts*-cited case of *Prestidge;* likewise *People* v. *Owen,* 154 Mich 571 (21 LRA NS 520); *People* v. *Biossat,* 206 Mich 334; *People* v. *Foster,* 211 Mich 486; and *People* v. *Podolski,* 332 Mich 508 (all following *Barker*); that determination of the question of admissibility was made during the course of trial of the accused, at which time all then available foundation testimony the people had assembled was before the Court.* That, as we conceive, is the right occasion for determination that this defendant did or did not voluntarily and so validly confess.

Courts are bound to guard and carefully defend the constitutional rights of persons charged with crime. They are bound by like obligation to protect society from the ravages of crime and to refrain from undue hampering of the presumptively valid

---

* In *Hamilton,* too, the question was decided upon offer, objection, and ruling during the course of trial. So it was when the McNabbs were tried. See *McNabb* v. *United States,* 318 US 332, 346 (63 S Ct 608, 87 L ed 819). *McNabb,* of course, is the judicial father of *Hamilton.*

(see *Barker*) efforts of police officers to perform duties which are quite as difficult as those of judges. In this jurisdiction it is believed that such dual obligation is acquitted best by insistence generally that questions of admissibility of evidence arising in criminal cases be settled during trial rather than by the device of motion prior to trial. Furthermore, such is the tendency of modern rulings made by the Federal courts. See *DiBella* v. *United States* (March 19, 1962), 369 US 121 (82 S Ct 654, 7 L ed 2d 614).

I concur in affirmance.

DETHMERS, J., concurred with BLACK, J.

ADAMS, J., did not sit.