460 P.2d 374

STATE of Idaho, Plaintiff-Respondent,

v.

Joseph Martin BITZ, Defendant-Appellant.

No. 9793.

Supreme Court of Idaho.

Oct. 15, 1969.

Rehearing Denied Nov. 10, 1969.

240

Jerry V. Smith, Lewiston, for appellant.

Robert M. Robson, Atty. Gen., and Mack A. Redford, Deputy Atty. Gen., Boise, Roy E. Mosman, Pros. Atty., Lewiston, for appellee.

SPEAR, Justice.

On May 20, 1962 the appellant was arrested and charged with first degree burglary in connection with the nighttime burglary of a Montgomery-Ward store in Lewiston, Idaho. Trial was set for October 28, 1963 before the Honorable John W. Cramer, but on October 25, 1963 the appellant filed an affidavit of prejudice pursuant to I.C. § 1–1801 seeking to dis-

qualify Judge Cramer from proceeding further in the case. Judge Cramer, however, was of the opinion that the affidavit was not timely filed and consequently denied it. The trial, over which Judge Cramer presided, resulted in a verdict of guilty of first degree burglary. On appeal this court reversed the conviction and remanded the case for a new trial on the ground that the appellant's affidavit of prejudice was timely filed and consequently Judge Cramer was disqualified to preside. State v. Bitz, 89 Idaho 181, 404 P.2d 628 (1965).

Following the reversal of his conviction, and prior to the new trial, the appellant on August 23, 1965 filed a petition for a writ of habeas corpus, seeking his release on the ground that the Nez Perce County Sheriff and warden of the state penitentiary unnecessarily delayed his arraignment following this court's order for a new trial. Judge Paul W. Hyatt, to whom the case had been assigned for the new trial, issued a writ of habeas corpus, and following a return on the writ a hearing was held on August 25, 1965, at the conclusion of which an order was entered quashing the writ.

Prior to trial, but subsequent to the hearing on the petition for habeas corpus, the appellant, seeking to disqualify Judge Hyatt, filed an affidavit of prejudice pursuant to I.C. § 1–1801 alleging that he had reason to believe that Judge Hyatt was prejudiced against him. No specific grounds for this belief were specified, but on October 5, 1965 a supplemental affidavit was filed specifying the following discussion between the court and appellant, which occurred on August 24, 1965, the day prior to the habeas corpus hearing, as an instance showing actual prejudice on the part of Judge Hyatt:

"MR. BITZ: Well, if I feel we can't agree on my defense, I'm sure I'll petition the Court for another Attorney.

"THE COURT: Well, you're not going to get one. I'm giving you your choice now. You're not going to monkey around with me at all. I'll give you your choice now. Whoever I appoint is going

to stay put in the case. I don't care whether you like it or don't like it.

"MR. BITZ: Well, that is the same kind of justice I got here the last time.

"THE COURT: You got more justice than you were entitled to when the Supreme Court sent it back for new trial. However, you are going to get a trial and you will get a fair trial. The question we are talking about is counsel."

Judge Hyatt refused to disqualify himself, and the case proceeded to trial before a jury on October 12, 1965. The appellant was again convicted of first degree burglary and was sentenced to a maximum term of ten years in the Idaho state penitentiary. He has appealed to this court from the judgment of conviction, assigning three errors.

■ Appellant first contends that the trial judge erred in refusing to acknowledge his affidavit of prejudice and disqualify himself from hearing the case. I.C. § 1-1801 provides in part that

"A judge cannot act as such in any of the following cases:

\* \* \* \* \* \*

(4) When either party makes and files an affidavit as hereinafter provided, that he has reason to believe, and does believe, he cannot have a fair and impartial hearing or trial before a district judge by reason of the bias or prejudice of such judge."

The affidavit need not state any grounds for the belief, and no hearing on the truth or falsity of the affidavit is required. As this court stated in Price v. Featherstone, 64 Idaho 312, 130 P.2d 853, 143 A.L.R. 407 (1942),

"Under the provisions of Sec. 1-1801, I.C.A., as amended, supra, the filing of the affidavit of prejudice, charging bias or prejudice on the part of the judge, is sufficient to disqualify him without any hearing as to whether the affidavit is true or false, and regardless of whether he is prejudiced as a matter of fact, and deprives him of all jurisdiction ex-

cept to make a proper order of removal of the cause or calling in another judge as required by the statute. The truth of the affidavit filed is not what disqualifies the judge, but the affidavit itself." (pp. 316-317 of 64 Idaho, p. 855 of 130 P.2d)

To the same effect is Davis v. Irwin, 65 Idaho 77, 139 P.2d 474 (1943).

■ There are, however, certain limitations on the use of this procedure. No affidavit may be filed in a case "after any contested matter in relation to such litigation has been submitted for decision to any judge sought to be disqualified." I.C. § 1-1801; Cooper v. Wescow Builders, Inc., 76 Idaho 278, 281 P.2d 669 (1955); Ex Parte Medley, 73 Idaho 474, 253 P.2d 794 (1953); Aker v. Coleman, 60 Idaho 118, 88 P.2d 869 (1939). And no more than one judge can be disqualified in the same action or proceeding. I.C. § 1-1801.

The State contends in the present case that the appellant's petition for a writ of habeas corpus was submitted to Judge Hyatt for decision prior to the filing of the affidavit of prejudice and therefore the affidavit was not timely filed under I.C. § 1-1801. The State argues that the hearing on the petition for habeas corpus was a "contested matter in relation to such litigation." We do not agree. It is quite well settled that in criminal matters a habeas corpus proceeding is a civil proceeding entirely independent of the criminal action. Ex Parte Tom Tong, 108 U.S. 556, 27 L. Ed. 826, 2 S.Ct. 871 (1883); France v. Superior Court, 201 Cal. 122, 255 P. 815, 52 A.L.R. 869 (1927); Stewart v. Bishop, 403 F.2d 674 (8th cir. 1968); Oates v. People, 136 Colo. 208, 315 P.2d 196 (1957); People v. McCager, 367 Mich. 116, 116 N.W.2d 205 (1962); State ex rel. Nelson v. Rigg, 260 Minn. 57, 108 N.W.2d 723 (1961). For this reason it is our opinion that appellant was not precluded from filing an affidavit of prejudice merely because Judge Hyatt presided over the habeas corpus hearing which involved none of the issues which would be before the court in the trial of the case.

Appellant is, however, precluded from filing his statutory affidavit of prejudice by virtue of the clause providing that no more than one judge can be disqualified in the same action or proceeding. Appellant seeks to avoid the impact of this clause by pointing to that section of the statute which states that " * * * where a new trial is granted or ordered by either the district court or the Supreme Court, such affidavit may be filed as in the first instance." The appellant has, however, overlooked the fact that this clause is an exception to the clause prohibiting the filing of an affidavit after the court has already considered a contested matter in relation to the litigation. No exception appears to the clause stating that only one judge may be disqualified in the same action or proceeding.

■■ A new trial is not a new action or proceeding. 66 C.J.S. New Trial § 1, p. 62; Jackson v. Jackson, 69 Ohio App. 55, 42 N.E.2d 932 (1941); Central Surety & Ins. Corp. v. Atlantic Nat. Ins., 178 Neb. 226, 132 N.W.2d 758 (1965). Rather, it is merely a "reexamination of an issue of fact in the same court after a trial * *." I.C. § 10–601. This reexamination is a continuation of the original action, and the appellant, having already disqualified Judge Cramer, is therefore not entitled to disqualify Judge Hyatt under I.C. § 1–1801.

Our decision in this regard, contrary to appellant's assertions, does not force a defendant to proceed to trial before a biased judge. Although I.C. § 1–1801 provides a defendant with only one unquestioned disqualification, this provision is supplemented by Idaho Const. Art. I, § 18, which authorizes a change of judges whenever actual prejudice against a defendant is established. State v. Waterman, 36 Idaho 259, 210 P. 208 (1922); Davis v. Irwin, supra; Bell v. Bell, 18 Idaho 636, 111 P. 1074 (1910); Day v. Day, 12 Idaho 556, 86 P. 531 (1906). Appellant would have been entitled to disqualify Judge Hyatt if his supplementary affidavit were sufficient to prove the existence of *actual* prejudice or bias. An examination of the record, however, fails to substantiate the appellant's

allegations of prejudice. Appellant relies heavily upon the discussion quoted above, but this is the only occurrence which even remotely supports his allegations. The record as a whole on the other hand indicates that the appellant was afforded a fair and impartial trial.

Appellant's second assignment of error is that the trial court erred in refusing to grant his motion for a change of venue on the grounds that prejudicial news publicity prior to trial made it impossible for him to receive a trial by a fair and impartial jury in Lewiston. Appellant documented his motion for a change of venue with several newspaper clippings and with an affidavit from a Lewiston resident stating that he heard a member of a group of entertainers at a nightclub in Lewiston refer to another member of the group as "bad as Bitz," which statement provoked mirth and laughter among the patrons. The State, on the other hand, submitted various affidavits from other Lewiston residents stating that they did not understand the phrase "bad as Bitz" and that they believed the appellant could receive a fair trial in Lewiston.

■■ I.C. § 19–1801 authorizes a change of venue in a criminal action when it appears that a defendant cannot receive a fair and impartial trial in the county in which the indictment is pending. This court has held on numerous occasions, however, that a change of venue rests within the sound discretion of the trial court. State v. McKeehan, 91 Idaho 808, 430 P.2d 886 (1967); State v. Cypher, 92 Idaho 159, 438 P.2d 904 (1968); State v. McLennan, 40 Idaho 286, 231 P. 718 (1925); State v. Hoagland, 39 Idaho 405, 228 P. 314 (1924). Publicity itself does not require a change of venue. Where it appears that the defendant actually received a fair trial and that there was no difficulty experienced in selecting a jury, refusal to grant a change of venue is not a ground for reversal. State v. Cypher, supra; State v. McKeehan, supra; State v. McLennan, supra; People v. Speck, 41 Ill.2d 177, 242 N.E.2d 208 (1968).

In determining whether the appellant actually received a fair trial, several factors are important. It is significant, although not controlling, that the appellant's affidavit indicating prejudice in the community was met by an equal or greater number of affidavits indicating an absence of prejudice. State v. McLennan, supra. It is also significant that of the twelve jurors selected, four had read nothing about the case, the other eight had merely scanned the reports, and all twelve stated that they had formed no opinion as to the guilt or innocence of the appellant. State v. Krampotich, 163 N.W.2d 772 (Minn. 1968); State v. McLennan, supra. Additionally it should be noted that the appellant did not challenge for cause any of the jurors finally selected. If appellant were dissatisfied with the jury and believed that any juror was prejudiced against him, he should have raised the issue by challenging that juror for cause. His failure to do so indicates a satisfaction with the jury as finally constituted. Overton v. United States, 403 F.2d 444 (5th cir. 1968); People v. Speck, supra; People v. Gendron, 41 Ill.2d 351, 243 N.E.2d 208 (1968); State v. Ray, 274 N.C. 556, 164 S.E.2d 457 (1968).

An examination of the newspaper clippings which were made a part of the record indicates that the publicity in the present case does not compare in kind or quality to the publicity in Sheppard v. Maxwell, 384 U.S. 333, 16 L.Ed.2d 600, 86 S.Ct. 1507 (1966), relied upon by appellant. Moreover, the bulk of the publicity occurred prior to the first trial, which was slightly more than two years before the trial from which appellant appeals. Under such circumstances, much of the prejudicial impact, if any, of these articles was lost. State v. Cypher, supra; People v. Speck, supra; People v. Gendron, supra. The articles which appeared shortly before the second trial were, by and large, merely factual accounts of the arraignment and pre-trial events. There were no editorials or opinions expressed in the newspapers which aroused the feelings of passion of the public. State v. Hoagland, supra; State v. Krampotich, supra.

Considering the record as a whole, including the transcript of the voir dire examination, it appears that there was no unusual difficulty in selecting the jury and that the defendant received a fair trial. Therefore, we cannot hold the court's denial of a change of venue an abuse of the court's discretion.

Appellant next contends that the trial court erred in restricting his voir dire examination of prospective jurors. Appellant's counsel attempted to ask each juror whether he understood the doctrines of reasonable doubt and presumption of innocence and the defendant's constitutional right not to produce evidence in his own behalf, but rather to force the state to prove his guilt beyond a reasonable doubt. The State objected to these questions, and the court sustained the objection. Each question was framed in terms of an instruction on the particular issue of law to which it was directed and was designed to determine whether the juror would apply that principle of law.

The general rule regarding voir dire examination was stated by this court in State v. McKeehan, 91 Idaho 808, 430 P. 2d 886 (1967):

> "The rule in this jurisdiction is that great latitude is allowed in the examination of veniremen upon their *voir dire* for the purposes of determining whether there is sufficient ground to challenge the veniremen for statutory cause, I.C. §§ 19–2017 to 19–2022; *or* whether it is expedient to challenge them peremptorily, I.C. §§ 19–2015 and 19–2016. The scope of *voir dire*, examination of veniremen in a criminal case, however, is a matter resting in the discretion of the trial court, the exercise of which will not be reversed except in case of abuse." 91 Idaho at 819, 430 P.2d at 897.

Appellant contends that his questions were designed to determine whether it would be expedient to peremptorily challenge a juror, which is a permissible purpose under *Mc-*

*Keehan,* supra. The State, on the other hand, contends that the scope of voir dire for the purpose of laying a foundation for a peremptory challenge should be more limited than the scope of voir dire examination designed to elicit a basis for a challenge for cause. People v. Edwards, 163 Cal. 752, 127 P. 58 (1912). The main defect in appellant's questions, however, is not that they are designed more to reveal a reason for a peremptory challenge than to establish a basis for a challenge for cause, but rather that they were designed, not to elicit factual information from a juror, but to inquire into his knowledge of the law.

In State v. Hoagland, supra, this court had occasion to consider the propriety of questions for voir dire examination which were surprisingly similar to the questions involved here. There this court held that

"Counsel has no right to ask a juror as to whether he believes in any principle of law applicable to the case as the juror is bound to take the law from the court. * * * The jury is bound by the instructions of the court. * * * C.S., § 8930, names the grounds for challenge for cause, and any and all questions which would show or tend to show that any of the grounds named existed should be permitted; but as the question propounded would have no tendency to elicit information bearing on the grounds named in the statute, and would have no legitimate bearing on the issue of whether the venireman would be competent or incompetent to try the cause, but was directed to his knowledge of the law and whether he would follow the instructions of the court, the objection was properly sustained." (39 Idaho 417–418, 228 P. 318.)

Similarly, the courts in other jurisdictions have held that questions designed to inquire into a juror's knowledge of the law and his willingness to follow the court's instructions constitute improper voir dire examination. Carder v. State, 5 Md.App. 531, 248 A.2d 495 (1968); Stone v. United States, 324 F.2d 804 (5th cir. 1963); Williams v. Goodman, 214 Cal.App.2d 856, 29 Cal.Rptr. 877 (1963); Harrell v. Commonwealth, 328 S.W.2d 531 (Ky.App.1959); Knox v. State, 400 S.W.2d 750 (Tex.Cr. App.1966).

This court has held that a defendant is entitled to ask a prospective juror whether the mere accusation against the defendant raises any prejudice in his mind. Mattson v. Bryan, 92 Idaho 587, 448 P.2d 201 (1968). In the present case the appellant was allowed to ask this question, which, to a large extent, elicited the same information as the rejected question concerning the presumption of innocence would have elicited.

■ It is well settled that the scope of *voir dire* examination is within the discretion of the trial judge and that his ruling will not be disturbed except for a manifest abuse of discretion. State v. Pettit, 33 Idaho 326, 193 P. 1015 (1920); State v. Hoagland, supra. Since the only questions disallowed by the trial court were properly disallowed on the ground that they were directed to the juror's knowledge of the law, no abuse of discretion appears. There was, therefore, no error in limiting appellant's *voir dire* examination in this manner.

Conviction and judgment affirmed.

McFADDEN, C. J., and HAGAN, D. J., concur.

McQUADE, Justice (concurring specially).

While in agreement with the result reached by the majority in the opinion in this case, I am not fully in accord with some of their supporting reasoning. Appellant's counsel wished before trial to inquire of the veniremen if they understood the presumption of innocence, the right of the accused not to testify and the burden on the State to prove his guilt beyond a reasonable doubt. The district court refused to allow this line of questioning and that refusal, although assigned by the accused as error, has been upheld here. There are two interrelated reasons given by the majority for this holding. The first is that the scope of the *voir dire* examination lies

in the sound discretion of the trial court and that such discretion will not be reversed except in case of abuse. And, secondly, the reason why there was no abuse in this instance is that appellant's counsel's questions are said to have sought to test the veniremen's understanding of the law, which is an invasion of the province of the court. In my opinion such rule will fall short of what our state and federal constitutions require.

A person accused of serious crime is entitled to trial by jury as matter of constitutional right in the State of Idaho and the United States of America.[1] This is a right to an impartial jury, "that is a jury unbiased—just; a jury that will give [the defendant] the benefit of all his rights, including that of the presumption of innocence of crime until proven guilty."[2] In order that this right to trial by an impartial jury may be assured, the State has, by statute, allowed parties to examine veniremen and to reject those who evidence some bias against either side.[3]

The theory which underlies the statutory right to challenge for cause for bias is simple. A juror harboring some form of prejudice precludes a fair trial for the defendant. By hypothesis, he may not accord the defendant the presumption of innocence, he may require an explanation from the defendant and he may be willing to vote for a conviction even with a reasonable doubt. Any juror who is, for any reason, unable to

understand and accord the defendant's rights to be proven guilty beyond a reasonable doubt, not to have to come forward with testimony, and, most importantly, to be presumed innocent, no less denies an accused his right to an impartial jury than does a juror who holds some special prejudice against the defendant.[4] To fetter an accused's right to avoid jurors who would not honor his substantive rights, is to limit his right to trial by an impartial jury. To the extent that the majority's opinion would allow trial courts uncontrolled discretion to deny an accused the opportunity to ascertain if these procedural rules will be given effect by the fact finders, it would jeopardize the freedom to exercise the right to have a constitutional jury trial without even an opportunity for appellate review. With such reasoning I cannot agree.

There are holdings in other jurisdictions which recognize that it is the inability or unwillingness of a juror to follow the law which is the true basis of the challenge for cause for bias, and which, therefore, approve the practice of allowing counsel to give veniremen hypothetical questions on *voir dire*.[5] And this Court has held that allowing such hypothetical questions by a prosecutor in his effort to test a venireman's ability and willingness to follow the law, is not improper as an abuse of the trial court's discretion.[6] But, as the majority opinion points out, we have generally adhered to the rule that it should be the court

1. Constitution of the United States, Amendment 6; Constitution of the State of Idaho, art. I, sec. 7. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), in the course of holding that the Sixth Amendment's guarantee of trial by jury in serious criminal cases is operative in state court proceedings under the Fourteenth Amendment, includes a lengthy and valuable discussion of the importance of the right to trial by an impartial jury. It is in service of the principles announced therein, that the rule urged in this opinion is offered.

2. Olive v. State, 11 Neb. 1, 7 N.W. 444 (1881).

3. I.C. §§ 19–2017 and 19–2019(2).

4. State v. Harness, 10 Idaho 18, 27, 76 P. 788 (1904); State v. Messer, 99 W.Va. 241, 128 S.E. 373, 40 A.L.R. 608, 610 (1925); People v. Redola, 300 Ill. 392, 133 N.E. 292 (1921); Annotation, Failure to Understand or Unwillingness to Accept Presumption of Innocence or Rule as to Reasonable Doubt as Rendering Juror Incompetent, 40 A.L.R. 612 (1926).

5. See Annotation, Propriety and Effect of Asking Prospective Jurors Hypothetical Questions on Voir Dire, as to How They Would Decide Issues of Case, 99 A.L.R. 2d 7, 47–59 (1965).

6. State v. Pettit, 33 Idaho 326, 193 P. 1015 (1920).

and not counsel who gives the jury the law of the case. This need not, however, compel us to disregard the constitutional requirement that a defendant have a jury which will accord him his rights under the law. The better rule is one which respects the province of the court to give the law and the right of criminal defendants to remain secure in their right to a fair trial by an impartial jury. If a defendant's counsel (or, in the interest of justice, counsel for the State) wishes to examine veniremen on their understanding of and willingness to follow the rules of law which are designed to control the cognitive processes of fact finders, and if the trial court holds such examination improper as an invasion of the court's sphere, then counsel has the right to ask for general or stock instructions to the veniremen on that matter *at that time*. After such instructions counsel for both sides will be able to examine veniremen to test their ability to understand and to follow the law *as given by the court*. If this rule is followed it will still be the court's function to determine and announce the law, but the accused will at least have the opportunity to safeguard his right to trial before a jury which is prepared to do justice impartially according to the precepts of our law.

This rule not only secures the defendant in his constitutional right to a fair trial by jury, it is also more rational than the traditional practice of giving these instructions at the end of the trial. Of course it is true that charging the jury after all of the evidence has been presented is generally the best way to deal with most issues of law. But this should not be true as to such rules as the prosecution's burden of proof, the presumption of innocence, and the right to remain silent.[7]

These are precepts which are referred to above as "rules of law which are designed to control the cognitive processes of fact finders." Their application does not turn on any particular fact situation or any primary rule of substantive law. They are, rather, expected to be applied in every criminal trial. And they are designed to control the process by which fact finders perceive, understand, and apply *any* evidence presented in any trial as to any criminal charge.

In Idaho, for example, it is the rule that the presumption of innocence is supposed to abide with the accused throughout his entire trial, and that the jurors are expected, on a proper instruction, to keep that in mind when they consider the evidence.[8] But is it not the sheerest folly to suppose that jurors wait until the conclusion of a trial to consider the evidence? A jury is not made up of twelve tape-recorders, carefully transcribing everything set before them to disgorge it for consideration at some future hour. The jurors are men and women who think about, select, and correlate information as they receive it. Legal concepts, such as the presumption of innocence and the State's burden of proof, which are supposed to control the jury's decision-making processes, can have only limited effect at best if they are brought out after all the evidence is in and preliminary judgments have already been made. It seems utterly contradictory to say that the presumption of innocence stays with the defendant all through the trial, until the last evidence is in, and that the jury ought to keep this in mind, and at the same time not even to inform the jurors about this presumption until the jury is ready to render its verdict. If, however, the instruction were given before the commencement of trial, the jurors could approach the evidence in an informed and understanding way. They would be able to interpret the evidence in light of the presumption and the prosecutor's duty. And the defendant's right to have the presumption last through-

---

7. *See generally* Archer v. Shields Lumber Co., 91 Idaho 861, 865–866, 434 P.2d 79 (1967).

8. State v. Dong Sing, 35 Idaho 616, 629–630, 208 P. 860 (1922). *See also* State v. Stewart, 46 Idaho 646, 651–652, 270 P. 140 (1928); State v. Bubis, 39 Idaho 376, 381, 227 P. 384 (1924).

out his trial would be a meaningful reality because it would be invoked before the jury members had actually begun to form opinions which could be crucial to the outcome of the case. In other words, if the stock instructions were given before the trial began, as well as at the conclusion of the trial with other written instructions, the rules which were designed to control jurors' cognitive processes would be more likely to have effect.[9]

The problem of the instruction on the right not to take the stand is more difficult than those of the instructions on the proof burden and the presumption of innocence. The Supreme Court of the United States has held that it is a denial of due process of law under the Fourteenth Amendment for either prosecutor or judge to comment on a criminal defendant's failure to take the stand on his own behalf.[10] The rationale of this case is that such comments ought not to be made because no adverse inferences may be drawn from such a failure to testify. This result is said to be compelled by the Fifth Amendment's prohibition on compelled testimony by criminal defendants and the general requirement that the entire burden of showing the defendant's guilt beyond a reasonable doubt is on the State. This reasoning would seem to require that the jury be warned not to consider a failure to testify lest they draw some improper adverse conclusions therefrom. But if such an instruction is given at the end of the

trial it may be improper as a comment on the failure to testify, and, if any improper inferences have been drawn, it may only serve to remind the jurors of their unconstitutional conclusions. On this rationale there are already cases holding that such an instruction, as necessary as it may seem, is unconstitutional and prejudicial.[11] This impasse would be broken if the instruction on the right to remain silent were given before trial begins. Not only would the jury's possible mistaken conclusions not be reinforced, but, because the jury had been informed in advance that an accused's silence meant nothing, it would be less likely to develop any expectations of his testifying and less likely to be negatively impressed when he did not.[12]

I, therefore, believe that as a constitutional necessity to safeguard a meaningful right to a trial before an impartial jury and as a matter of a sound and rational decision-making process, an accused has a right to have an instruction on the rules of law which are designed to govern the frame of mind with which the jurors are to approach the evidence at the time when such an instruction would be of value, on *voir dire*. But the right is only one of having a special instruction out of the normal order of trial if it is asked for. Like any other right to special instructions, a defendant must ask for the instruction before a failure to give it will be considered error in this Court.[13]

9. *See generally*, People v. Izzo, 14 Ill.2d 203, 151 N.E.2d 329, 89 A.L.R.2d 187 (1958) (Schaefer, J. for the Court) ; and the Annotation following at 89 A.L.R. 2d 197.

10. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

11. *E. g.*, People v. Molano, 253 Cal.App. 2d 841, 61 Cal.Rptr. 821, 18 A.L.R.3d 1328 (1967) (Hearing denied Cal.S.Ct., 1967) ; State v. Zaragosa, 6 Ariz.App. 80, 430 P.2d 426 (1967) ; Russell v. State, 240 Ark. 97, 398 S.W.2d 213 (1966).

12. Thereby avoiding the confusing and difficult situation which confronted this Court in State v. Darrah, 92 Idaho 25, 435 P.2d 914, 917 (1968).

13. The rule on the necessity of requests for instructions in criminal cases is discussed in a well-reasoned opinion in State v. Patterson, 60 Idaho 67, 74–78, 88 P.2d 493 (1939). The distinction which was made in that case was between "stock," general, or necessary instructions, and instructions "on a particular point" or "special" instructions. *Id.*, at 77–78, 88 P.2d 493. The distinction sought to be made here is between necessary instructions at the "stock" time and necessary instructions at a "special" time, in other words, deviations from the normal order of trial. State v. Spencer, 74 Idaho 173, 180, 258 P.2d 1147 (1953).

The appellant failed to request the necessary instructions below, but preferred instead to stand on his right to ask the questions. He may not delay litigation indefinitely by attempting to cure that failure here.

I concur in the result and opinion of the majority except for the qualification set out above.

DONALDSON, J., concurs.