702 P.2d 1370

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Thomas Daniel SANGER,
Defendant-Appellant.**

No. 14503.

Court of Appeals of Idaho.

July 5, 1985.

Steve Bell, Coeur d'Alene, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

Thomas Daniel Sanger was convicted of three counts of second degree murder and one count of assault with intent to murder. The crimes occurred in Orofino, Clearwater County, Idaho. Before the case was tried, Sanger applied for a change of venue because he believed that due to adverse pretrial publicity he could not receive a fair and impartial trial in Clearwater County. The court denied the motion. On appeal, Sanger contends the trial court erred in refusing to grant the change of venue. We uphold the order denying a change of venue and we affirm the judgment of conviction.

The events of June 11, 1980, no doubt, shocked the small community of Orofino, Idaho. Three young adults, Billie Sue Norton, Debra Haines and Tim Schultz were shot and killed in Norton's trailer. A fourth victim, Dennis Grissom, was shot, but managed to escape and survive the incident. The headlines of the local paper read of this unfortunate affair. KOZE, a local radio station, interviewed Grissom from his hospital bed the day after the shooting. Grissom was quoted as saying, "A gunman, without a word, burst in the trailer home and opened fire." In addition, the murders were the main topic of conversation in the community. Due to this publicity, Sanger moved for a change of venue. After a hearing, the trial court held the motion to be premature and inappropriate without first trying to choose a jury. Therefore, the motion was denied.

A defendant is guaranteed a constitutional right to a "panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961); *Murphy v. Florida,* 421 U.S. 794, 799, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1975). A criminal defendant may seek a change of venue by statute or by rule of criminal procedure if he believes a fair and impartial trial cannot be had in the county where the indictment is pending. I.C. § 19-1801; I.C.R. 21; *State v. Brooks,* 103 Idaho 892, 655 P.2d 99 (Ct.App.1982). The trial court can transfer the case to another county if satisfied that a fair and impartial trial cannot be had. *Id.* This decision rests with the sound discretion of the trial court. *State v. Bainbridge,* 108 Idaho 273, 698 P.2d 335 (1985); *State v. Needs,* 99 Idaho 883, 591 P.2d 130 (1979).

In *Needs* the Idaho Supreme Court set forth a list of factors to consider in determining whether the defendant received a fair and impartial trial:

> [A]ffidavits indicating prejudice or an absence of prejudice in the community where the defendant was tried, testimony of the jurors at voir dire as to whether they had formed an opinion of the defendant's guilt or innocence based upon adverse pretrial publicity, whether the defendant challenged for cause any of the jurors finally selected, the nature and content of the pretrial publicity, and the amount of time elapsed from the time of the pretrial publicity to the trial itself. *See e.g., State v. Bitz,* [93 Idaho 239, 460 P.2d 374 (1969)], *supra.* Publicity by itself does not require a change of venue. *Id.* [Footnotes omitted.]

*Id.* at 890, 591 P.2d at 137.

When Sanger moved for a change of venue, some ten months after the shooting, two affidavits were submitted with the motion. One was the defendant's and one

was by a KOZE radio broadcaster. Sanger's affidavit stated that as a result of newspaper and radio coverage he did not believe he could receive a fair trial in Clearwater County. The affidavit of the broadcaster mentions a newscast of Sanger's arrest. It also summarizes, briefly, a broadcast of the interview of Grissom, mentioning that Sanger was the "gunman [who] without word burst into the trailer home and opened fire." It does not otherwise suggest that Sanger was prejudiced by the interview. The state filed the affidavit of Ralph Brady, Chief Deputy Sheriff of Clearwater County, opposing the change of venue. It was Brady's belief, from talking with numerous persons in the county, that there was not wide-spread prejudice against the defendant and that he could receive a fair trial in Clearwater County. Absent further specific allegations of prejudice, we do not believe the affidavits show actual prejudice or any interference with Sanger's right to receive a fair trial in Clearwater County. Therefore, we hold that the trial court did not abuse its discretion when it initially denied Sanger's motion for change of venue prior to trial.

When the case was tried six months later, sixty-six potential jurors were questioned before twelve jurors and three alternates were finally chosen. Of the sixty-six, thirty-two were dismissed for cause; nineteen were peremptorily challenged, seven by the prosecution and twelve by the defense. The majority of those dismissed for cause knew of the case either by reading the newspaper accounts of the incident or knowing people connected to the case. Each had formed an opinion based on the information received. We think it is significant to point out that the prosecutor, joined by defendant's counsel, moved to excuse twenty-seven jurors for cause, with the defendant moving to excuse the remaining five. After the jury and the three alternates were chosen, defense counsel renewed the motion for change of venue. He urged that a change of venue be granted because of the difficulty in seating twelve

impartial jurors. The prosecutor countered, stating he found the jurors acceptable and noting defense counsel's waiver of his final peremptory challenge. The court addressed the issue, first, by noting the procedures followed to prevent any prospective juror from stating aloud their opinion as to the defendant's guilt or innocence, and his willingness to question any of the jurors individually, outside the presence of the others. The court then explained:

> [I]t is true that we asked each panel whether they had formed or expressed an opinion about the guilt or innocence of your client. And it's true that roughly 50 percent of the hands went up in each panel. A substantial number .... [were] disposed of for cause. Which leads me to believe that we didn't have that much difficulty in selecting our jury from 50 percent who didn't have opinions. It ... is also clear to me from the questioning process that many people who indicated that they held an opinion in fact did not hold an opinion. What they held was a feeling or a reaction to what they had read a long, long time ago. And did not actually hold any kind of opinion about the guilt or innocence of your client ... And as I said yesterday, there's been a time lapse of nearly a year and a half since the alleged occurrences and the questioning indicated to me that the bulk of the jurors who even raised their hands and indicated they had some kind of an opinion and eventually were dismissed for cause, that even those people in fact did not have a clear memory of any of the events.... People who said they had a reaction which was going to interfere with their process were excused and you were not even required to use your peremptory challenges to deal with that. And so I feel quite strongly that our panel was successfully chosen from people who, one, had no real recollection of even what it is they had heard in the past. And certainly had no opinion about the guilt or innocence of your client.

And certainly have no mental attitudes that were going to affect their decision in this particular case.

Of the twelve jurors who were finally selected, none had been challenged for cause. All of the jurors had heard of the case either by way of newspaper, radio or word of mouth. However, only three of the final twelve jurors said they had a preconceived opinion on the defendant's guilt or innocence. The preconceived opinions were not strong and each juror felt he or she could set aside any previous information heard and judge the defendant on the evidence submitted. As the United States Supreme Court noted in *Murphy v. Florida, supra:*

Qualified jurors need not, however, be totally ignorant of the facts and issues involved.

"To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." [*Irving v. Dowd*], 366 U.S. [717] at 723, 6 L.Ed.2d 751, 81 S.Ct. 1639 [at 1642].

*Id.,* 421 U.S. at 799–800, 95 S.Ct. at 2035–2036. We believe the jurors chosen met this standard.

■ As to the nature of pretrial publicity, no newspaper articles were included in the record and the radio interview of Grissom is recalled in general, factual terms. Nothing indicates the pretrial publicity distorted the facts of the case. We have not been shown any inflammatory editorial opinions which would be likely to prejudice the defendant's right to a fair trial. The answers of potential jurors, as they were questioned during trial, might lead us to speculate that rumors and information flowed through Orofino like Whiskey Creek in June. Even so, the lapse of time between the incident and trial—some seventeen months—did much to evaporate the initial flood. Any prejudicial impact the initial publicity had upon the jurors' states of mind would have been diminished. The trial judge hearing the jurors, observing their responses and gauging the atmosphere of the trial, was in a far better position to determine whether a fair trial could be had in Clearwater County at that time. We must give considerable deference to his determination where we are not shown any manifestations of unfairness either in the trial or in the pretrial publicity.

■ Finally, the verdicts themselves do not indicate that Sanger received an unfair trial. He was originally charged with three counts of first degree murder. The state presented evidence tending to show that Sanger premeditated killing two of the persons he shot. Sanger was not convicted of first degree murder, instead he was found guilty of the lesser included offense of second degree murder. Deliberations of the jury took many hours. These factors indicate the jurors were not predisposed to find Sanger guilty as charged. Rather they illustrate the jurors weighed the evidence submitted before reaching their verdicts. The evidence to support each of those verdicts was overwhelming.

Under the totality of circumstances test in *Murphy v. Florida, supra,* we hold that the motion for change of venue was properly denied. We believe Sanger was provided a fair and impartial trial in Clearwater County.

The judgment is affirmed.

WALTERS, C.J., concurs.

BURNETT, J., dissents without opinion.